[L. A. No. 26895.   In Bank.   Nov. 9, 1962.]

THELMA L. KLEIN, Plaintiff and Appellant, v. JOSEPH R. KLEIN, Defendant and Respondent.

Wolver and Wolver and Eugene L. Wolver for Plaintiff and Appellant.

Patterson and Clements, Robert J. Clements, Hobart G. Patterson and Albert E. Nelson for Defendant and Respondent.

PETERS, J.—This case involves the rule of interspousal immunity for personal torts. In this respect it is similar to *Self* v. *Self, ante,* page 683 [26 Cal.Rptr. 97, 376 P.2d 65]. The instant case, however, unlike the *Self* case, in-

volves a negligent tort rather than an intentional one. ██ We are of the opinion that insofar as interspousal liability for tort is concerned there is no logical or legal reason for drawing a distinction between the two, and that for that reason, the rule announced in *Self* v. *Self, supra,* is here controlling.

In the instant case, Thelma Klein filed her complaint against Joseph Klein on January 5, 1962. The complaint contains two causes of action. The first alleges that for some time prior to April 15, 1961, defendant owned and possessed a certain pleasure boat; that on April 15, 1961, plaintiff and defendant were married; that plaintiff has no right, title or interest in the pleasure boat; that on July 8, 1961, defendant invited plaintiff on the boat for a fishing trip; that after the trip was completed and the boat moored, plaintiff commenced to clean the exterior of the pleasure boat with the approval and consent of defendant; that defendant knew that the exterior deck of the boat was covered with a covering that when wet became so slippery and slick that it was difficult to maintain footing thereon; that in cleaning the pleasure boat it was necessary for plaintiff to use the exterior deck; that defendant knew that this was so; that prior to plaintiff walking on the exterior deck, defendant with full knowledge that plaintiff would have to use that deck, and contrary to his former practices and customs, did so negligently, carelessly and recklessly cause water to be placed on certain parts of the boat so that water ran down over the exterior deck so that it was not safe to walk on; that plaintiff while walking on the deck fell and broke her leg as a proximate result of the defendant's negligence.

The second cause of action is predicated upon the same facts as the first except that it is alleged that defendant, knowing plaintiff would walk upon the deck in question, failed to warn her of the slippery and unsafe condition of which he had knowledge.

The defendant demurred to this complaint on several grounds, among which was the alleged incapacity of the plaintiff to sue defendant because of the marital status of the parties. The demurrer was sustained without leave to amend on the ground that one spouse may not sue the other in California for a personal tort. Judgment was entered in favor of defendant and the plaintiff has appealed.

In *Self* v. *Self, supra, ante,* page 683, it was held that because the reasons for the rule of interspousal immunity for

torts no longer exists, and because of certain legislative changes in recent years, that rule should be abandoned.

Respondent contends that even if the rule of *Peters* v. *Peters*, 156 Cal. 32 [103 P. 219, 23 L.R.A. N.S. 699], is to be abandoned as to intentional torts, it should be retained as to negligent torts. It is argued that to permit tort actions based on negligence to be maintained between spouses will cause the courts to be inundated with trifling suits, will tend to destroy conjugal harmony, and, because of the possibility of insurance, will encourage collusion, fraud and perjury. These arguments are not convincing. Similar arguments were advanced in the *Self* case as reasons for maintaining the old rule as to intentional torts and such arguments were there found not to be convincing. They are not any more convincing here. It is our opinion that the logical and legal reasons set forth in the *Self* case that caused us to abandon the old rule as to intentional torts apply with equal force to negligent torts.

It is of some significance that, so far as we have been able to ascertain, none of the 18 states that have adopted the more modern view have drawn such a distinction.

The argument about the maintenance of conjugal harmony was adequately answered in the *Self* case.

The argument about inundating the courts with trifling suits is palpably unsound. We have not been informed that such result has followed in any of the 18 states that have repudiated the old rule. In response to this same argument, in *Spellens* v. *Spellens*, 49 Cal.2d 210 [317 P.2d 613], Justice Schauer, in his concurring and dissenting opinion, at page 241 stated: "The court should not decline to entertain a meritorious action against a spouse . . . because of the dubious apprehension that in some future case trifling domestic difficulties may become the subject of litigation." That is a sound argument.

The contention that there may be insurance involved, and that to permit such actions in such cases will encourage collusion, fraud and perjury, is also not convincing. Such arguments should be advanced to the Legislature, and not to the courts. Where such a danger is made clear to the Legislature it has not been slow to act.[1]

It is, of course, fundamental in the law of torts that

---

[1]Thus the Legislature enacted the guest law, now section 17158, Vehicle Code, abolishing causes of action by guests in an automobile against the host for simple negligence, but retaining such an action based on the intoxication or willful misconduct of the host.

any person proximately injured by the act of another, whether that act be willful or negligent, should, in the absence of statute or compelling reasons of public policy, be compensated. The possibility of fraud or perjury exists to some degree in all cases. But we do not deny a cause of action to a party because of such a danger. There is no contention that any collusion is involved in the present case. When, as and if that issue does arise in future cases the courts are equipped to meet it. As was said in *Emery* v. *Emery*, 45 Cal.2d 421 [289 P.2d 218], a case that held that an unemancipated minor could sue his minor brother or sister and parent for an intentional tort (pp. 431-432):

"Defendants' second argument, that tort actions between minor brothers and sisters will encourage fraud and collusion, is based on assumptions opposite from those on which their first argument is based. This argument assumes that the action is not in reality directed against the minor brother or sister of the plaintiff, but is in fact directed at his liability insurer. If this assumption is correct, maintenance of such a tort action would not disturb the family peace and harmony; on the contrary, the 'domestic harmony will not be disrupted so much by allowing the action as by denying it.' (Prosser on Torts [2d ed.] 677.) Moreover, although defendants' statement that the existence of insurance, of which there is no evidence in the present case, 'gives no cause of action where one did not exist before' is correct, by the same token the mere possibility of fraud or collusion because of the possible existence of liability insurance does not warrant immunity from liability where it would otherwise exist. The interest of the child in freedom from personal injury caused by the tortious conduct of others is sufficient to outweigh any danger of fraud or collusion. As the Supreme Court of Washington said in reply to the same argument in a case involving an analogous situation [action by a child to recover for injuries caused by its parent's negligent operation of a truck for business purposes], 'The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. *Rozell* v. *Rozell*, *supra* [281 N.Y. 106 (22 N.E.2d 254, 123 A.L.R. 1015)]. If those

processes prove inadequate, the problem becomes one for the Legislature. . . . Courts will not immunize tortfeasors from liability in a whole class of cases because of the possibility of fraud, but will depend upon the Legislature to deal with the problem as a question of public policy.' (*Borst* v. *Borst, supra,* 41 Wn.2d 642, 653-654 [251 P.2d 149].)''

This is a complete answer to the contentions of respondent. It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual.

It is true that in some respects the law has drawn a distinction between intentional and negligent torts. It has been held in California that a child may sue his parent for an intentional tort, contrary to the common-law rule, but may not sue him for a negligent tort. (*Emery* v. *Emery, supra,* 45 Cal.2d 421 (a case involving an intentional tort); *Trudell* v. *Leatherby,* 212 Cal. 678 [300 P. 7] (a case denying to a minor any recovery against a defendant who was standing in the position of one *in loco parentis*); *Gillett* v. *Gillett,* 168 Cal.App.2d 102 [335 P.2d 736] (a case involving an intentional tort); *Perkins* v. *Robertson,* 140 Cal.App.2d 536 [295 P.2d 972] (a case involving both an intentional and negligent tort).)

But, because these cases have made a distinction between the two types of tort in the parent-child relationship, there is no logical basis for extending the distinction to the husband-wife relationship. As already pointed out, as to such relationship, the doctrines of identity of the persons, and of maintenance of the sanctity of the home, are no longer applicable. This being so, and there being no other argument to the contrary that is convincing, we are of the view that the rule of *Self* v. *Self, supra,* is here applicable.

Judgment reversed.

Gibson, C. J., Traynor, J., Tobriner, J., and White, J.,* concurred.

SCHAUER, J., Dissenting.—While I concur in the adoption of the rule of interspousal liability for intentional torts

*Assigned by Chairman of Judicial Council.

to the person announced in *Self* v. *Self, ante,* p. 683 [26 Cal. Rptr. 97, 376 P.2d 65], I believe it ill-advised for this court to undertake to extend that rule to interspousal liability for simple negligence. Inherent in every assertion of the latter liability are opportunities and incentives for—and hence probabilities of—collusion and fraud far more real than those involved in claims based on intentional torts. For this among other reasons, if the proposed extension is to become law it should be so declared by the Legislature after proper study of the problem and formulation of such specific rules as may be found necessary to protect all parties. (Cf. *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]; *id.* at p. 221 (dissenting opinion by Schauer, J.); *Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325]; Civ. Code, § 22.3.)

Time and again in recent years the appellate courts of our sister jurisdictions have so held in personal injury cases grounded on negligence. Thus, rejecting a contention that the common-law rule of interspousal immunity should be judicially abrogated in a negligence action, the Supreme Court of Missouri reasoned that "Obviously, the general assembly is not only better equipped than this court to investigate and develop the facts pertinent to a determination of this phase of public policy but also has greater authority to deal with the particular problem and at the same time the related ones. The problem with which we are concerned is not an isolated one. It touches on many subjects with which the Legislature has dealt, such as the privileged communications of married persons, a husband's liability for his wife's support which includes medical expenses, and the children's rights of inheritance from their parents. Also, the insurance business is affected with a public interest, is subject to the control of the state's police power and has been extensively regulated." (*Brawner* v. *Brawner* (1959, Mo.) 327 S.W.2d 808, 813 [6].) Among the many recent cases in accord with this view are *Ennis* v. *Donovan* (1960) 222 Md. 536 [161 A.2d 698, 701-702 [3]]; *Koenigs* v. *Travis* (1956) 246 Minn. 466 [75 N.W.2d 478, 487 [13]]; *Koplik* v. *C.P. Trucking Corp.* (1958) 27 N.J. 1 [141 A.2d 34, 41 [4]]; *Ensminger* v. *Ensminger* (1955) 222 Miss. 799 [77 So.2d 308, 310 [3]]; *Corren* v. *Corren* (1950, Fla.) 47 So.2d 774, 776; *Wright* v. *Wright* (1952) 85 Ga. App. 721 [70 S.E.2d 152, 154 [1]]; *Benevides* v. *Kelly* (1960) —— R.I. —— [157 A.2d 821, 824

[4, 5]]; cf. *Shumway* v. *Nelson* (1961) 259 Minn. 319 [107 N.W.2d 531, 532 [1]]. Indeed, judicial interference in this sensitive area of substantive law may well have the opposite effect: e.g., within a few months after the Supreme Court of Illinois judicially abrogated in that state the common-law rule of interspousal immunity in an action based on "wilful and wanton" conduct resulting in an automobile accident (*Brandt* v. *Keller* (1953) 413 Ill. 503 [109 N.E.2d 729]) the Illinois Legislature reinstated the immunity rule as to all personal torts between spouses, enacting that "neither husband nor wife may sue the other for a tort to the person committed during coverture." (Ill. Rev. Stats. 1953, ch. 68, § 1; see *Hindman* v. *Holmes* (1955) 4 Ill.App.2d 279 [124 N.E.2d 344, 345].) Such legislative reversal of judicial declarations of "public policy" has not been unknown in California. In this connection it is to be remembered that the common-law rule in this state is not a mere court-declared rule. To the contrary the rule is of legislative origin. (Civ. Code, § 22.2: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State.") And as unqualifiedly declared in *Lean* v. *Givens* (1905) 146 Cal. 739, 742 [81 P. 128, 106 Am.St.Rep. 79], "The common law is in force in this state except as modified by statute, or the constitution." As recently as 1961 (Stats. 1961, ch. 1404, p. 3209, § 1) the Legislature in reenacting the doctrine of governmental immunity from tort liability (after it had been set aside by a majority decision of this court in *Muskopf* v. *Corning Hospital Dist.* (1961), *supra*, 55 Cal.2d 211, 213 [1]) expressly reaffirmed that the doctrine "was adopted *by statute* in this State in 1850 *as part of the common law of England.* . . ." (Italics added.)

When the Legislature sees fit to change the common-law rule it is able—as we are not—to view the problem in all its ramifications and to provide the necessary safeguards against abuses of the law. In New York, for example, it was settled case law prior to 1937 that neither spouse could bring an action against the other for negligent personal injury. (See e.g., *Mertz* v. *Mertz* (1936) 271 N.Y. 466, 469 [3 N.E.2d 597], and cases there cited.) In 1937, however, the Legislature acted, and promulgated a complete statutory scheme regulating the problem. Chapter 669 of the Laws of 1937 contained four pertinent sections. The first section amended

the Domestic Relations Law, expressly granting to each spouse a right of action against the other for negligent or intentional injury to the person. The second section added a provision to the Insurance Law, declaring that no policy theretofore or thereafter issued "shall be deemed to insure against any liability of an insured for injuries to his or her spouse . . . unless express provision for such insurance is included in the policy." The third and fourth sections amended the Vehicle and Traffic law by providing that insurance policies issued to motor vehicle owners were not required to insure against claims for personal injury by the owner's spouse. As a New York appellate court observed shortly afterwards, "These simultaneous enactments disclose a considered legislative intent to create a right of action theretofore denied, and at the same time to protect insurance carriers against loss through collusive actions between husband and wife. In such actions there is a manifest opportunity for fraud" (*Fuchs* v. *London & Lancashire Indemnity Co.* (1940) 258 App.Div. 603 [17 N.Y.S.2d 338, 340 [3, 4]]). This is sound and realistic lawmaking. In California too, respect for the rights of all our citizens demands no less. Certainly the majority's amendment to the law should not be given retroactive effect in respect to insurance contracts.

The majority lay great emphasis on certain language in my concurring and dissenting opinion in *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 234 [317 P.2d 613]. I am gratified that the majority have now (in *Self* v. *Self, ante,* p. 683 [26 Cal.Rptr. 97, 376 P.2d 65]) accepted the proposition which I advanced in *Spellens* as preferably applicable to malicious torts. But as recognized in *Self* (at pp. 688-689) the *Spellens* case did not deal with the question now before us in *Klein.* Rather, *Spellens* turned on the resolution of various problems of divorce law and the law of estoppel, and the thrust of my opinion was directed to those issues. To the extent that the *Spellens* case is at all relevant, it must be remembered that the wrong to which I proposed to "refuse to apply" the interspousal immunity rule was not simple negligence but an intentional tort, i.e., malicious abuse of process resulting in mental suffering.

The distinction in this regard between intentional torts and negligent torts is a valid one, grounded on hard facts. Accident liability policies do not ordinarily insure against intentionally inflicted injuries, and hence the incentives for trumped up actions against insurers based on intentional tort

are few or nonexistent. But negligent injuries offer a fertile field for conjugal collusion and fraud. The wife—to take as example the suspiciously frequent case—is shaken up in an automobile accident caused by the husband's inattentive driving. Perhaps, on reflection, she discovers symptoms of a whiplash injury. An action for damages is brought nominally against the husband who, being insured, stands only to gain by losing and hence willingly plays the role of defendant. The resultant judgment for the "plaintiff" wife is collected from the "defendant" husband's insurer, and provides a tidy sum which both spouses may then enjoy as the fruits of conjugal cooperation. Or, conversely, the husband sues the wife for injuries allegedly caused when he slipped on a highly polished kitchen floor, tripped over the wife's mop, or suffered a similar household mishap. The variations on this theme are limited only by the ingenuity of the parties and the patience of the insurance company.

The majority find it to be "of some significance that, so far as we have been able to ascertain, none of the 18 states that have adopted the more modern view have drawn such a distinction." (*Ante*, p. 694.) A glance at the recent case law of neighboring Oregon, however, discloses at least one jurisdiction where this same distinction has been clearly drawn. In *Apitz* v. *Dames* (1955) 205 Ore. 242 [287 P.2d 585, 598 [5]], the Supreme Court of Oregon unanimously abrogated the common-law rule of interspousal immunity insofar as it precluded actions between spouses based on an *intentional* personal tort. But in the companion case of *Smith* v. *Smith* (1955) 205 Ore. 286 [287 P.2d 572, 585 [6]], decided the same day, the Oregon court held—again unanimously—that if there is to be any change in the common-law rule of interspousal immunity in actions based on *negligent* personal torts, it must come from the Legislature.

The majority here opine that "the logical and legal reasons" for which we abandoned in *Self* v. *Self, ante,* p. 683 [26 Cal.Rptr. 97, 376 P.2d 65], the interspousal immunity rule as to intentional torts "apply with equal force to negligent torts." (*Ante,* p. 694.) In its well-reasoned opinion in *Smith* v. *Smith* (1955) *supra,* the Supreme Court of Oregon concludes on the contrary that "In the case of intentional wrongs, considerations of great potency are involved which are not present in cases involving negligence only." (*Id.* at p. 578 [5] of 287 P.2d.) I shall not prolong this opinion by repeating the persuasive analysis by which the

Oregon court demonstrates the inapplicability, in interspousal negligence actions, of the arguments here invoked by the majority (see, e.g., *id.* at pp. 580-583). It is enough to quote that passage of the opinion which specifically stresses the probabilities of fraud inherent in such actions (*id.* at p. 583):
"The minority rulings brush aside the risk of collusion by the husband and wife by the simple assertion that the courts know how to deal with collusive suits. But it is obvious that the risk of collusive action increases when the parties plaintiff and defendant are in confidential relationship. The risk of financial loss is ordinarily inducement enough to encourage a sturdy defense. Remove from a defendant the risk of loss and substitute the covert hope of profit and a situation arises which should give us pause. . . . We revere the jury system as the bulwark of individual liberty, but we are also realists, and we know that juries are, as a Kentucky mountaineer once said— 'tolerable generous with other people's money,' especially when the aroma of insurance permeates the courtroom. It would seem that if husband and wife want protection by insurance, accident policies are available. We do see a substantial risk of miscarriage of justice when, in the peace and harmony of conjugal bliss, a wife prepares a damage suit against her husband over the solitary protest of an insurance company."

In California, where negligence actions are no less common, juries no less human, and awards no less generous, this timely warning should be all the more heeded.

For the reasons stated I would affirm the judgment.

McComb, J., concurred.