[L. A. No. 26878. In Bank. Nov. 9, 1962.]

CATHERINE SELF, Plaintiff and Appellant, v. ADRIAN SELF, Defendant and Respondent.

Robert H. Lund and John R. Brunner for Plaintiff and Appellant.

Wolver and Wolver and Eugene L. Wolver as Amici Curiae on behalf of Plaintiff and Appellant.

Baird, Mooney & Baird, C. Duane Mooney and Woodrow W. Baird for Defendant and Respondent.

PETERS, J.—The sole problem involved in this case is whether California should continue to follow the rule of interspousal immunity for intentional torts first announced in this state in 1909 in the case of *Peters* v. *Peters*, 156 Cal. 32 [103 P. 219, 23 L.R.A. N.S. 699]. Because the reasons upon which the *Peters* case was predicated no longer exist, and because of certain legislative changes made in recent years, we are of the opinion that the rule of the *Peters* case should be abandoned. In other words, it is our belief that the rule should be that one spouse may sue the other in tort, at least where that tort is an intentional one.

In the instant case, the problem arises under the following circumstances: The complaint for assault and battery was filed on May 5, 1961. It charges that the defendant husband on July 14, 1960, "unlawfully assaulted plaintiff and beat upon, scratched and abused the person of plaintiff," and that as a result plaintiff "sustained physical injury to her person and emotional distress, and among other injuries did receive a broken arm." The answer consists of a general denial, except that it is admitted that plaintiff's arm was broken. Contributory negligence of plaintiff is alleged, and, as an additional affirmative defense, it is alleged that at the time the injuries occurred the parties were married. Thereafter, defendant filed a notice of motion for a summary judgment on the ground that a wife cannot sue a husband for tort in California. This motion was supported by an affidavit averring that the parties had been married on November 2, 1954, and, on the date of the affidavit (May 18, 1961), were still married, although an action for divorce was pending. The motion for summary judgment was granted, and judgment for defendant entered.

The common-law rule of interspousal immunity for either intentional or negligent torts is of ancient origin. It was fundamentally predicated on the doctrine of the legal identity of husband and wife (1 Blackstone, Commentaries, *442; 2 Blackstone, Commentaries *433). This rule precluded actions between the two as to either property or personal torts. As long as this doctrine existed, the rule prohibiting a tort action between the spouses was logically sound. As Prosser points out (Prosser on Torts (2d ed. 1955) p. 671): "If the man were the tort-feasor, the woman's right would be a chose in action which the husband would have the right to reduce to possession, and he must be joined as a plaintiff against himself and the proceeds recovered must be paid to him; and if

the tort involved property, the wife had no right of possession to support the action. If the wife committed the tort, the husband would be liable to himself for it, and must be joined as a defendant in his own action.'' But the social order upon which this concept was predicated no longer exists. Early in the 19th century married women's emancipation acts were passed in all American jurisdictions. These were designed to confer upon women a separate legal personality, and to give them a separate legal estate in their own property. They conferred upon a wife the capacity to sue or be sued without joining the husband, and generally, as far as third persons were concerned, made the wife separately responsible for her own torts.

From an early date it was recognized that a primary purpose of these statutes was to free the wife's property from the control of her husband. As a result, most American jurisdictions agreed that inasmuch as these statutes destroyed the legal identity of husband and wife, one spouse could recover against the other for a tort, intentional or negligent, committed against his or her property. (See discussion, Prosser on Torts (2d ed. 1955) p. 672.) But this emancipation was not generally extended to the field of personal torts, most of the courts rationalizing that personal tort actions between husband and wife, if permitted, would destroy the peace and harmony of the home, and thus would be contrary to the policy of the law. As Prosser aptly points out (*supra*, p. 674) : ''This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him.''

In 1910 Justice Harlan in the case of *Thompson* v. *Thompson*, 218 U.S. 611 [31 S.Ct. 111, 54 L.Ed. 1180, 30 L.R.A. N.S. 1153], in a dissent, in which Justices Hughes and Holmes concurred, pointed out that the old doctrine was outmoded, that the arguments in support of it were specious, and that the married women's act of the District of Columbia had so emancipated women that, properly interpreted, they should permit a tort action by one spouse against the other. Since then, the number of ''majority'' states adhering to the old rule has steadily dwindled, until today at least 18 jurisdic-

tions have followed the reasoning of this dissent. (See annotation 43 A.L.R.2d, pp. 647-651, where 16 "minority" states are listed. That annotation was written in 1955. Since then at least two other states have joined these 16. See *Ennis* v. *Truhitte* (Mo.) 306 S.W.2d 549, and *Koplik* v. *C. P. Trucking Corp.*, 47 N.J.Super. 196 [135 A.2d 555].) Practically every legal writer in this field agrees that the old rule is archaic and outmoded, and that the minority rule is the better rule. (See Prosser on Torts (2d ed. 1955) p. 674; 1 Harper & James, The Law of Torts (1956) pp. 645-646; 2 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1220; McCurdy, *Torts Between Persons in Domestic Relation* (1930) 43 Harv.L. Rev. 1030; Albertsworth, *Recognition of New Interests in the Law of Torts* (1922) 10 Cal.L.Rev. 461; Farage, *Recovery for Torts Between Spouses*, 10 Ind.L.J. 200.)

California has several cases adhering to the old rule. The first case to discuss the problem in California was *Peters* v. *Peters, supra,* 156 Cal. 32, decided in 1909, the year before Justice Harlan's dissent in *Thompson* v. *Thompson, supra,* 218 U.S. 611 [31 S.Ct. 111, 54 L.Ed. 1180, 30 L.R.A. N.S. 1153]. In *Peters* the action was by the husband against the wife for assault and battery. The wife, without justification, seriously wounded her husband by willfully shooting him in the leg. The court held (p. 34) that ". . . we are satisfied that, under the law in this state as it is, an action cannot be maintained by one spouse against the other for a battery committed during the continuance of the marriage relation . . . . The question is entirely new in this state and such cases are rare in other jurisdictions, but there is no case in favor of the right to maintain such an action."

The court squarely based its conclusion upon the reasoning that California had adopted the common law, and that at common law no such action existed. The court recognized that under the married women's emancipation acts (p. 34) "it is now generally held that an action at law concerning property may be maintained between them." It cited several out-of-state cases adopting the common-law rule of spousal disability as to personal torts, and particularly cited the early New York case of *Longendyke* v. *Longendyke*, 44 Barb. (N.Y.) 366, and quoted with approval the statement in that case that "to allow such actions is 'contrary to the policy of the law and destructive of that conjugal tranquility which it has always been the policy of the law to guard and protect.' " (156 Cal. at p. 35.) The court went on to hold that the various

code sections (Civ. Code, §§ 158, 159, 155, and Code Civ. Proc., § 370) as they then read did not change the common-law rule in California.

The *Peters* case has been cited with approval and followed by this court and by several of the District Courts of Appeal, but until the concurring and dissenting opinion of Justice Schauer in 1957 in *Spellens* v. *Spellens*, 49 Cal.2d 210 [317 P.2d 613], no attempt was made to reappraise the doctrine or to analyze the possible effect on it of legislative changes since 1909. In other words, in the cases following the *Peters* case the rule of *Peters* was simply accepted by both parties, the litigants contending that the rule was or was not applicable to a particular factual situation. Thus in *Watson* v. *Watson*, 39 Cal.2d 305 [246 P.2d 19], the action was for malicious prosecution by the husband against the wife. The court stated (p. 306) : "It is the established rule generally and is the law in California that where the parties are lawful spouses the one may not sue the other for damages in tort," citing the *Peters* case. Neither party seriously challenged that rule, the husband urging that the rule did not apply because the marriage between the parties was void. The court held that, under the facts, the husband was estopped to challenge the validity of the marriage. That was the basic point involved.

*Paulus* v. *Bauder*, 106 Cal.App.2d 589 [235 P.2d 422], was a negligence case growing out of an automobile accident. Both parties accepted the rule of the *Peters* case, the injured party claiming that the rule did not apply when the tort was committed after the interlocutory, and the case was tried after final divorce. The court held that because the marital bonds existed when the tort was committed, the rule of *Peters* applied.

In *Cubbison* v. *Cubbison*, 73 Cal.App.2d 437 [166 P.2d 387], an auto accident occurred while the parties were married but living separate and apart. The court held that the rule of *Peters* was applicable in spite of the separation.

*Langley* v. *Schumacker*, 46 Cal.2d 601 [297 P.2d 977], illustrates how the courts have tried, whenever possible, to find that the marital tort is one to a "property" right and therefore not within the rule of the *Peters* case. This was an action for fraud against the husband for inducing his wife to marry him. The marriage was subsequently annulled, and then this fraud action was commenced. The court cited the rule barring personal tort actions between the spouses, but holds that that rule does not apply to marital tort actions involving property,

and cites several California cases so holding, and then concludes (p. 604) : "Whatever may have been the scope of the immunity at common law it should not apply to interspouse property tort actions such as the present one."[1]

The property tort exception was also applied to an action between spouses involving slander of title to real property in *Smith* v. *Stuthman,* 79 Cal.App.2d 708 [181 P.2d 123].

*Foote* v. *Foote,* 170 Cal.App.2d 435 [339 P.2d 188], is interesting for another reason. There, prior to marriage, the defendant injured the plaintiff in an automobile accident. Then the parties intermarried, and then the complaint was filed. Both parties accepted the rule of *Peters,* but plaintiff successfully contended that that rule did not apply to premarital torts, even though the action was filed, and of course tried, after marriage. The reason given for this holding was that when the tort was committed the cause of action was the separate property of the wife, and that the recovery, even though occurring after marriage, remained her separate property.

That brings us to the case of *Spellens* v. *Spellens, supra,* 49 Cal.2d 210, a case decided in 1957 and referred to earlier in this opinion, and in which Justice Schauer wrote a concurring and dissenting opinion, joined by Justice McComb. The case involved primarily the rights of the parties growing out of a Mexican divorce. The majority opinion was entirely, and the concurring and dissenting opinion mainly, involved with these divorce problems. The rule of interspousal immunity for tort was not mentioned in the majority opinion. But it was discussed in the concurring and dissenting opinion. It was there pointed out that California, in the *Peters* case, had adopted the rule of "interspousal disability to maintain an action for personal tort" but that "this court could well consider overruling the holding" of the *Peters* case. It was pointed out that the doctrine of interspousal immunity had been "tellingly criticized" and that a minority of states permit such actions, and then it was stated (p. 241) : "I would prefer to reexamine the common law view of interspousal immunity and refuse to apply it to this case, rather than distort plaintiff's action for damages to her feelings into an action for damage to property. None of the reasons which have been

---

[1] Of course, it could be argued that, since any cause of action, whether for a personal tort or not, is a chose in action which is "property" (40 Cal.Jur.2d p. 282) one spouse may sue the other for a tort under the rule that such an action will lie to protect a property right (*Prosser* v. *Prosser,* 114 S.C. 45 [102 S.E. 787]).

suggested in support of the common law view [as stated in *Peters*] apply to this action. As this litigation demonstrates, any conjugal harmony of this quasi-marriage has long since been disrupted. Certainly there can be no thought of collusion between these parties. The court should not decline to entertain a meritorious action against a spouse . . . because of the dubious apprehension that in some future case trifling domestic difficulties may become the subject of litigation.''

Justice Schauer then pointed out that a possible justification of the marital immunity rule as announced in *Peters* is that the law as it existed then provided that the recovery by the wife in most such tort actions would be community property—see *Flores* v. *Brown*, 39 Cal.2d 622 [248 P.2d 922], and *Zaragosa* v. *Craven*, 33 Cal.2d 315 [202 P.2d 73, 6 A.L.R.2d 461]—and held that such justification did not exist in the instant case, because (49 Cal.2d at p. 242): "Plaintiff acquired the judgment for abuse of process after she and defendant had finally separated. It was, therefore, her separate property . . . .''

Justice Schauer then turned his attention to the suggestion made in several cases that if any change was to be made in the rule of the *Peters* case it should come from the Legislature and not from the courts. He referred to such argument as "not persuasive,'' and continued (p. 242): "The rule was originally formulated by this court in reliance upon a now outmoded common law rule, and if this court becomes convinced that the rule is unwise it should see fit to change it.''

 From this analysis of the California cases it appears that the basic reasons given by the *Peters* case for adopting the rule no longer exist, that subsequent cases have simply cited the earlier case without analysis, and that several cases have limited the rule. The rule of the *Peters* case is definitely out of line with the general policy of the law of this state. Of course, the general rule is and should be that, in the absence of statute° or some compelling reason of public policy, where there is negligence proximately causing an injury, there should be liability. Immunity exists only by statute or by reason of compelling dictates of public policy. Neither exists here. That being so, these are sufficient reasons alone to justify this court in overruling the *Peters* case and in adopting the more modern, intelligent, and proper rule.

 As already pointed out, the fundamental basis of the interspousal disability doctrine—legal identity of husband and wife—no longer exists. Moreover, there are statutes

which are inconsistent with any such concept. Aside from the sections of the Civil Code permitting the wife to contract freely with her husband as to her property rights[2] and making her personally liable for her own torts,[3] section 370 of the Code of Civil Procedure[4] confers upon her the right to be sued or sue in tort in her own name.

As already pointed out, the contention that the rule is necessary to maintain conjugal harmony—one of the reasons given in the *Peters* case—is illogical and unsound. It would not appear that such assumed conjugal harmony is any more endangered by tort actions than by property actions—yet the latter are permitted. For these reasons alone the old common law rule should be abandoned. But there exists another and compelling reason why the rule of the *Peters* case is no longer the rule that should be followed in this state, and that is that in 1957 the Legislature saw fit to provide that "All damages, special and general, awarded a married person in a civil action for personal injuries, are the separate property of such married person." (Civ. Code, § 163.5, added by Stats. 1957, ch. 2334, pp. 4065-4066, § 1.) Prior to 1957, both the cause of action and damages recovered for personal injuries to either spouse were community property. (*Zaragosa* v. *Craven*, *supra*, 33 Cal.2d 315, 321; see 4 Witkin, Summary of Cal. Law (7th ed. 1960) Community Property, § 6, p. 2710; 1 Armstrong, Cal. Family Law (1953) p. 492.) As a result, contributory negligence was imputed between the spouses to prevent a spouse guilty of contributory negligence from sharing

[2]Section 157 of the Civil Code provides, in part, that: "Neither husband nor wife has any interest in the property of the other. . . ." Section 158 of the Civil Code provides, in part, that: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; . . ." Thus, if the husband breaks his contract with his wife in reference to property, or breaks the gate to her house, she could sue him. But, under the *Peters* case, she cannot sue him if he breaks her arm!

[3]Section 171a of the Civil Code provides that: "For civil injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be liable therefor, except in cases where he would be jointly liable with her if the marriage did not exist."

[4]Section 370 of the Code of Civil Procedure provides that: "A married woman may be sued without her husband being joined as a party, and may sue without her husband being joined as a party in all actions, including those for injury to her person, libel, slander, false imprisonment, or malicious prosecution, or for the recovery of her earnings, or concerning her right or claim to the homestead property." This section has several times been amended since 1909 when the *Peters* case was decided (Stats. 1913, p. 217; Stats. 1921, p. 102) and is now much broader than it was then.

in the amount received (*Kesler* v. *Pabst,* 43 Cal.2d 254, 256 [273 P.2d 257]). Until this amendment, the wife was considered in privity with her husband, so that a judgment against the husband in an action for his personal injuries suffered in an automobile collision was res judicata on the issues presented in a subsequent action by the wife against the same defendant for personal injuries she suffered in the same accident. (*Zaragosa* v. *Craven, supra,* 33 Cal.2d 315, 316 et seq.) The hardships created by allowing the contributory negligence of one spouse to be a defense against the other caused criticism (see *Selected 1957 Code Legislation* (1957) 32 State Bar J. 507, 508), and the injustice of that rule was undoubtedly the basic reason for the legislative change in 1957. But while these rules existed they constituted some justification for the continuance of the rule of the *Peters* case. Obviously, it would be incongruous for a wife to sue her husband for a personal tort as long as the recovery would be community property controlled and managed by the husband. (See 2 Armstrong, Cal. Family Law (1953) p. 1468.)[5] Thus, the legislative change of 1957 by the addition of section 163.5 to the Civil Code removed the last bar to the adoption of the more modern rule in this field.

The arguments that permitting such actions will inundate the courts with trifling suits, and that to permit such action will encourage perjury, fraud and collusion, are not relevant in an intentional tort case. They may be relevant in a negligent tort case, such as *Klein* v. *Klein, post,* p. 692 [26 Cal.Rptr. 102, 376 P.2d 70], and will be discussed in that opinion.

It is therefore held that because the reasons given for the holding of the *Peters* case no longer exist, and because of the addition of section 163.5 to the Civil Code in 1957, that case and the cases following it are disapproved, and that the proper rule is that at least for an intentional tort, one spouse may maintain an action against the other in California.

The judgment appealed from is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and White, J.,† concurred.

---

[5] Some circuity would also have existed prior to 1957 if the husband had been permitted to sue his wife for tort. While damages would have been payable from her separate estate, the recovery would have been community, one half of which, of course, would have been vested in her.

†Assigned by Chairman of Judicial Council.