384 P.2d 389

**Lydia RUBALCAVA, Plaintiff and Respondent,**

v.

**Ruby L. GISSEMAN, Administratrix of the Estate of Theodore Rubalcava, Deceased, Defendant and Appellant,**

**Union Pacific Railroad, a corporation, Defendant.**

**No. 9822.**

Supreme Court of Utah.

Aug. 12, 1963.

Skeen, Worsley, Snow & Christensen, Salt Lake City, for appellant.

Elton & Moore, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff Lydia Rubalcava sues the Union Pacific Railroad and the estate of her husband, Theodore Rubalcava, for injuries

she suffered in an auto-train collision which occurred at about 2 a. m., November 12, 1961, in the 1600 West block in Salt Lake City, and in which her husband as driver was killed.

Defendant estate moved to dismiss on the ground that a wife cannot maintain a tort action against her husband (or his estate). From a denial of that motion the estate appeals.

■ We are not concerned on this appeal with the merits of the cause of action, which alleged intoxication of the deceased husband,[1] but only with whether a wife can maintain such an action. We have heretofore confronted and found difficulty with a closely related problem in the case of Taylor v. Patten,[2] which we will refer to below. In view of that fact it seems appropriate in approaching this question to survey its background, and the rulings of other courts concerning it.

■ In former times at common law it was considered that upon marriage, the wife as a legal entity merged with her husband; that her person and property became his; that any recovery for injury to them belonged to him, and that the suit had to be brought in his name. The concept of unity was correlated to that of the husband being master of the house and the objective of preserving family harmony, which it was thought adverse interests, and a fortiori, lawsuits over them, would tend to disrupt. Following this tenor of thought it has also been reasoned that permitting such suits would open the door to actions upon occurrences in the family which should be left to time and the normal give and take of married life to heal; and further, that where insurance is involved, because of the common interest the spouses would have in the outcome, collusion would be encouraged.

The plaintiff asserts that the concept of complete legal unity is an outmoded vestige of a bygone era; that with this change in legal status, the reasons based upon it militating against suits of this character should also pass into the discard; and that under what are called married women's statutes, there has been such an enlargement of a wife's individual rights that the action should be permitted. Under these statutes, which confer upon a wife rights concerning her person, her separate ownership of property; and the privilege of suing in her own name in respect thereto, it is quite uniformly held that in proper circumstances the wife may sue her husband in regard to contract or property. But there is a divergence of authority as to whether this extends her privilege to actions in tort against him.

---

1. Sec. 41-9-1, U.C.A.1953 precludes a guest passenger from recovery except for intoxication or wilful misconduct.

2. 2 Utah 2d 404, 275 P.2d 696 (1954).

A minority of jurisdictions have interpreted them to justify actions of this nature.[3] These courts make various answers to the reasons given for not allowing the action. To the argument for marital harmony they respond that tort actions do not disrupt the family any more than contract actions. They ask euphemistically, "Why should a wife be allowed to recover for a broken contract, but not for a broken arm?" And reason further that the wrongful act has likely impaired the marital harmony anyway, so the lawsuit would not extend the rift, but, if anything, would tend to rectify it. The contention that it would open the door to numerous suits over trifling matters is countered by saying that an action having real merit should not be prohibited because of the possibility of abuse with unmeritorious ones,[4] and the collusion argument, insofar as it applies to family unity, by saying that since the insurance company, and not the defendant,

will have to pay, the family exchequer will not suffer so much by allowing the action as by denying it, so the family harmony will not be harmed but may be served by allowing the action.[5]

It is to be conceded readily that the idea of the spouses' single legal entity in the husband has passed into limbo; and perhaps more reluctantly, that as a generality, the idea that the husband is master of the house exists more in theory than in fact, so that its persuasive force in shaping the policy of the law is minimal. Nevertheless, a majority of courts reject the reasons stated above as given by the minority for allowing such actions as not persuasive. They emphasize the proposition that it should be the purpose of the law to protect family solidarity and adhere to what we consider to be the better and sounder view by refusing to allow an action such as this.[6]

A leading case espousing this position is Thompson v. Thompson,[7] in which the

3. A good discussion of the authorities in this area may be found in Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660, 43 A.L.R.2d 632; 43 Harv.Law Rev. 1030; Prosser: Torts 2 Ed. p. 670. See also Bennett v. Bennett, 224 Ala. 335, 140 So. 378; Rains v. Rains, 97 Colo. 19, 46 P.2d 740; Roberts v. Roberts, 185 N.C. 566, 118 S.E. 9, 29 A.L.R. 1479; Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526; Lorang v. Hays, 69 Idaho 440, 209 P.2d 733; Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70; Apitz v. Dames, 205 Or. 242, 287 P.2d 585.

4. Self v. Self, 58 Cal.2d 683, 26 Cal.Rptr. 97, 376 P.2d 65 (1962).

5. See Prosser: Torts 2 Ed. p. 677.

6. Austin v. Austin, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388; Sink v. Sink, 172 Kan. 217, 239 P.2d 933; Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382; Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267; Holman v. Holman, 73 Ga.App. 205, 35 S.E.2d 923; Poling v. Poling, 116 W.Va. 187, 179 S.E. 604; Corren v. Corren, 122 La. 472; Fla., 47 So.2d 774; Castellucci v. Castellucci (R.I., 1963), 188 A.2d 467. See also Callow v. Thomas, 322 Mass. 550, 78 N.E.2d 637, 2 A.L.R.2d 632; Lunt v. Lunt, Tex.Civ.App., 121 S.W.2d 445.

7. 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910).

United States Supreme Court considered similar statutes of the District of Columbia and found them not broad enough to allow interspousal suits in tort. The court expressed the opinion that the enactment of a statute permitting the wife to sue and be sued in her own name was intended to confer the procedural privilege of suing to protect rights she had but not to create a new cause of action which had not theretofore existed.[8]

We are in accord with the reasoning that statutes expressly allowing actions by the wife against the husband in respect to contract and property, do not compel the conclusion that tort actions should also be included. If there is danger of marital discord from the former, that evil will not be minimized by expanding the statutes' meaning to permit tort actions as well. The old adage, two wrongs do not make a right, is applicable.

The answer to the argument for marital harmony: that discord will not be engendered when the insurance company is to pay, is neither sound nor entirely realistic. The question of liability can be ascertained justly only upon its own merits. Whether there is insurance or not is immaterial to this determination. However, the fact cannot be ignored that where there is insurance, and this is known to both parties, the temptation to collusion exists; and this is increased when the supposedly adverse parties are in the symbiotic relationship of husband and wife. The risk of loss, and the natural reaction to defend against a charge of wrong, may be negligible or nonexistent; and are supplanted by the covert hope of mutual benefit. It is obvious that for persons so disposed, the situation would provide spawn for lawsuits that otherwise would not be brought. We are impressed with the wisdom of Justice Sims, dissenting in Brown v. Gosser,[9] wherein he stated that to allow interspousal actions "encourages raids on insurance companies through unmeritorious claims which never would be instituted where the husband did not carry liability insurance, thus possibly raising insurance rates on thousands of honest persons for the benefit of the fraudulent few." [10]

The argument that domestic felicity will not be impaired when the insurance com-

8. See also Romero v. Romero, 58 N.M. 201, 269 P.2d 748; Keister's Adm'r. v. Keister's Ex'rs., 123 Va. 157, 96 S.E. 315, 1 A.L.R. 439; Austin v. Austin, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388; Levlock v. Spanos, 101 N.H. 22, 131 A.2d 319; Long v. Landy, 35 N.J. 44, 171 A.2d 1; Robinson v. Gaines, Mo., 331 S.W.2d 653; Ensminger v. Campbell, 242 Miss. 519, 134 So.2d 728; Gordon v. Pollard, 207 Tenn. 45, 336 S.W.2d 25.
9. Ky., 262 S.W.2d 480, 43 A.L.R.2d 626.
10. See also Austin v. Austin, note 6, supra; Smith v. Smith, 205 Or. 286, 287 P.2d 572 (1955); and Justice Schauer's dissent in Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962).

pany is to pay seems to lose sight of the principle that collusion itself is something dishonest to be guarded against. We assume that it will be agreed that the objective of a fair and just determination is not to be subverted by providing an easy means for a discordant pair to unite happily in collusion against a third party simply for the sake of marital harmony. More fundamental ethical thinking will demonstrate that this ultimately would not serve the cause of household concord anyway. If spouses join in dishonest chicanery against a third party, this would weaken the foundation of their relationship because when troubles arise, as they always do in marriage, the parties would then suspect each other's integrity.

Plaintiff has also placed reliance upon some authorities which have held that even though the action should not otherwise be maintainable, where the husband has beaten his wife or committed other intentional wrong against her, or where he is dead, so that "there remains no domestic peace and felicity to be protected," it should be allowed.[11] As will appear below in analyzing our statutes, no basis can be found therein for any distinction between intentional or unintentional torts. Under them the plaintiff either has a right to bring an action in tort, or she does not. This is also true where the husband is deceased. In that regard this further is to be said: whether such a cause of action exists should be determined upon the basis of the facts at the time of the alleged wrongful act and not upon whether the accused lives or dies thereafter. The incongruity and illogic of holding that an injured wife could not recover against her husband if he survived, but only if he should die, is patent.[12]

From the foregoing background we approach the most important and the controlling aspect of this case: analysis of our own statutes, in which the basis of this cause of action would have to be found. They indicate clearly that our legislature intended to depart from the marital unity fiction and to establish the wife as a separate personality legally. Numerous rights as to her person, her separate ownership of property and the privilege of suing in respect to them are conferred upon her. The first section we look at is Sec. 78–11–1, U.C.A.1953, which provides in general lan-

11. Apitz v. Dames, 205 Or. 242, 287 P.2d 585, (intentional tort action allowed); Smith v. Smith, 205 Or. 286, 287 P.2d 572 (negligent tort action denied). That the action is maintainable after the death of the spouse see, Ennis v. Truhitte, Mo., 306 S.W.2d 549; Johnson v. People's First National Bank & Trust Co., 394 Pa. 116, 145 A.2d 716; Davis v. Smith, D.C., 126 F.Supp. 497.

12. A comparable anomaly existed at common law prior to the wrongful death statutes (from Lord Campbell's Act). A tort action was personal to plaintiff and abated if he died from the injury; thus putting the defendant in a better position than if the plaintiff lived.

guage that a wife may sue or be sued in her own name, with no reference to subject matter. This is part of our Judicial Code (Code of Civil Procedure), is procedural, and serves only to give the wife the privilege of suing to protect whatever rights she may have but does not purport to create for her any new or substantive cause of action. Any such right would be found in Title 30, Husband and Wife, which particularizes the rights which they possess under our law: The wife's rights are set forth in Sections 30–2–1 to 10, U.C.A.1953, that she may: (1) own separate property; (2) enter into contracts and enforce them in her own right, "to the same extent and in the same manner as if she were unmarried"; (3) deal in property with her husband; (4) have her own wages, and may "prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried"; and to "recover against a third person" for her personal injury; (5) be free of her husband's debts and obligations; (6) maintain an action against her husband in regard to her property; (7) be solely liable for civil injuries caused by her; (8) act as agent for her husband; (9) be charged with family expenses; and (10) have certain rights in the family homestead.

▌ It is argued that this delineation of rights, particularly Section 2, which authorizes a wife to enforce her contracts; and 4, which states that she may "prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried," provide the foundation for this action. However, careful reading shows that with respect to the authorization in those two sections, the former speaks only of contracts and the latter is referring only to her wages and property rights.[13] Following this authorization the latter section refers to the right of recovery for injury to her person:

> "There shall be no right of recovery by the husband on account of personal injury or wrong to his wife * * * but the wife may recover against a *third person* for such injury or wrong as if unmarried, * * *." (Emphasis added.)

This language simply takes from the husband the right of action for injury to the wife and gives it to her. Since the husband and wife are the only two persons mentioned, the authorization of the wife to recover "against a third person" can only reasonably be interpreted as against someone other than the husband. We are unable to find in this section, either expressly or by implication, any authority for the wife to sue her husband in tort. But as we read the language, its plain import is to the contrary; and the authorization to sue a *third*

---

13. See discussion in dissenting opinion of Chief Justice Henriod in Taylor v. Patten, note 2, supra.

*person* clearly manifests that this section was formulated in an awareness that no right to sue the husband existed.

This conclusion also finds support in Sec. 30-2-6, which deals with the right of husband and wife to sue each other. It is limited to property; and includes no reference to personal injury. Applying the maxim, expressio unius est exclusio alterius, it would seem that the authority granted the wife to sue her husband was advisedly limited to suits with respect to her property. This principle is applicable to the entire Title 30 on Husband and Wife. The legislature having carefully detailed the numerous rights a wife may have, both as to her property and her person, conferring on her the privilege of suing to protect these rights, and expressly including her husband with respect to her property; and to sue a *third person* for injury to her person, the omission of any authority to sue her husband in tort is significant. Had the legislature intended that she have the right, it would have been set forth with the rest; and its omission fairly implies that no such right was intended.

There is another important consideration which has a bearing on the issue here. It has always been the law of our state, insofar as we have been able to ascertain, that a suit of this character could not be maintained. It is inevitable that this has been assumed to be the law and has been depended upon in the formation of existing contracts. We are of the opinion that under these circumstances, in fairness to those who have relied thereon, and in proper deference to the solidarity of the law, any change could be justified only to correct patent error,[14] otherwise it should be made by the legislature, plainly so declaring, so that all may be advised what the change is and when it will be effective.[15]

We have arrived at this conclusion notwithstanding Taylor v. Patten.[16] Insofar as that case may be considered inconsistent with this opinion,[17] it is overruled.

Reversed. No costs awarded.

HENRIOD, C. J., and McDONOUGH and CALLISTER, JJ., concur.

WADE, Justice.

I dissent, adhering to my views expressed in Taylor v. Patten.

14. That this is sometimes done where it affects vested interests, and given only prospective effect, see Great Northern Ry. Co. v. Sunburst Oil Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360.

15. See statement in Allen v. Board of Education, 120 Utah 556, 236 P.2d 756, 763.

16. Footnote 2, supra.

17. The writer considers the case of Taylor v. Patten distinguishable from the instant one for the reasons pointed out in my opinion concurring in the result in that case. This, without expecting my concurring colleagues to join in the expression of this footnote.