## Mazzone v. Mazzone

*William J. Kelly*, for plaintiff.
*Richard T. Ruth*, for defendant.

McCLELLAND, *J.*, February 13, 1981—Plaintiff in this case is challenging the viability of the Pennsylvania interspousal immunity doctrine.

Plaintiff has alleged that, while married to defendant, defendant committed certain tortious acts against her, namely: assault, battery, invasion of privacy, intentional infliction of emotional distress and false imprisonment.

Defendant's preliminary objections assert plaintiff's lack of capacity to sue based on the doctrine of interspousal immunity.

The parties in this case are still married; a suit in divorce begun in October of 1980 is pending.

In his brief in support of the preliminary objections, defendant cites the case of Turner v. Turner, 487 Pa. 403, 409 A. 2d 412, 1979, as an assertion of the continuing vitality of the Married Woman's Privacy Act, 48 P.S. §111 from which the interspousal immunity doctrine is derived.

The theory of interspousal immunity has been that the Married Woman's Property Act prohibits a wife from suing her husband except in a proceeding for divorce or in a suit to protect and recover her

separate property. Unliquidated personal injury damages is not "separate property" according to case law: DiGirolamo v. Apanavage, 454 Pa. 557, 312 A. 2d 382, 1973. Thus, the doctrine of interspousal immunity began as a judicial interpretation of a legislative act.

First, we wish to correct defendant's mistaken reliance on the Turner case. Far from reaffirming the interspousal immunity doctrine, the court in Turner merely explained that the doctrine was inapplicable where the express provision of the Married Woman's Property Act was inapplicable. In Turner, the court held that a personal injury action was not barred where the parties were divorced even though the tortious conduct occurred during the marriage since the act only applied to "married women."

In recent times, the doctrine of interspousal immunity has been the subject of much examination which has resulted in its abrogation in a majority of states.[1] Those states which have not completely discarded the antiquated doctrine have abrogated it insofar as it bars claims for willful and intentional torts. See, e.g., Bounds v. Caudle, 560 S.W. 2d 925, Tex. 1977.

An examination of the policies espoused in support of the doctrine of interspousal immunity is enlightening in that it reveals both the obsolescence of the policies themselves and also the ineffectiveness of the doctrine in effectuating those policies.

There are three basic policies underlying the interspousal immunity doctrine: (1) The identity of the wife is merged into that of the husband upon

---

1. For a listing of those states abolishing interspousal immunity, see, Deese, "The Law of Interspousal Immunity in Ohio," 28 Cleveland State Law Revue 115, 117, fn. 24, 1979.

marriage so that a suit between husband and wife is nothing more than a suit by the husband against himself[2]; (2) Allowing suits between spouses would generate marital discord; and (3) There is too great a likelihood of fraud and collusion where the parties are husband and wife.

As for the first policy, the practice of treating husband and wife as one and the same person was outlawed with the adoption of the Married Woman's Property Act. In Pennsylvania, that act was adopted in 1848.[3] Ironically, that same act has been the basis upon which Pennsylvania courts have perpetuated the archaic doctrine of interspousal immunity.

The second policy—the court's fear that such suits would promulgate familial disharmony—is most unwarranted where intentional torts are involved. If one spouse has intentionally committed a tortious act against the other, there is little harmony for the court to protect.

Finally, there is the fear of fraud and collusion. The fallacy of this policy was best expressed by James L. Deese in "The Law of Interspousal Immunity in Ohio," 28 Cleveland State L. Rev. 115 at 121:

"The policy of preventing fraud and collusion does not justify interspousal immunity. A husband and wife may be more likely to collude because of the closeness of their relationship, but this close relationship exists between parent and child, brother and sister, or for that matter even between a couple

---

2. William Prosser, "The Law of Torts," Section 122, p. 860, 4th Edition, 1971.

3. P.L. 536, §§ 6-11, as amended, 48 P.S. §§64, 116, 1965.

living together. There is no immunity recognized for them, and apparently there is no great fear of fraud and collusion. In addition, our adversary system of justice is designed to weed out fraudulent and collusive claims. (Footnote omitted.)

In a vigorous dissent in the DiGirolamo case, Justice Roberts disentangled the interspousal immunity doctrine from its legislative underpinnings and exposed the doctrine's injustice and irrationality in light of today's social and economic realities.

Judge Montemuro of the Philadelphia Court of Common Pleas followed the lead of Justice Roberts and dismissed preliminary objections based on the interspousal immunity doctrine. In the case of Koche v. Koche, P.C.R. 602, 609, 1980, Judge Montemuro ruled, "We believe that interspousal immunity is truly an archaic doctrine whose reason for being has ceased to exist and which requires abolition."

Dean Prosser asserted: "The devastating attack on the old rule found in a number of recent decisions seems to leave no possible justification for it except that of historical survival." ("The Law of Torts" by Professor William L. Prosser, Third Edition, page 885.)

In addition, as Judge Montemuro wrote in Koche v. Koche,

"From the legal standpoint we observe that in recent years the courts have abolished various immunities as being unjust and/or irrational. Among those immunities so discarded we find:

1. Governmental immunity: Ayala v. Philadelphia Board of Public Education, 305 A. 2d 877, 453 Pa. 584, 1973;

2. Parental immunity: Falco v. Pados, 444 Pa. 372, 282 A. 2d 351, 1971;

3. Charitable immunity: Flagiello v. Pennsylvania

Hospital, 417 Pa. 486, 208 A. 2d 193, 1965;

4. Sovereign immunity: Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A. 2d 709, 1978.

"In addition to setting aside of these immunities, our research reveals a clear movement away from the doctrine of interspousal immunity.

"We agree with Mr. Justice Miller of West Virginia as he stated in Coffindaffer v. Coffindaffer, 244 S.E. 2d 338, W. Va. 1978: 'When we look to other jurisdictions, we observe a decided trend to abolish or restrict the doctrine of interspousal immunity. Bennett v. Bennett, 224 Ala. 335, 140 So. 378, 1932; Cramer v. Cramer, 379 P. 2d 95, Alaska 1963; Leach v. Leach, 227 Ark. 599, 300 S.W. 2d 15, 1957; Klein v. Klein, 58 Cal. 2d 692, 26 Cal. Rptr. 102, 376 P. 2d 70, 1962; Rains v. Rains, 97 Colo. 19, 46 P. 2d 740, 1935; Bushnell v. Bushnell, 103 Conn. 583, 131 A. 432, 1925; Rogers v. Yellowstone Park Co., 97 Idaho 14, 539 P. 2d 566, 1975; Brooks v. Robinson, 259 Ind. 16, 284 N.E. 2d 794, 1972; Brown v. Gosser, 262 S.W. 2d 480, Ky. 1953; Lewis v. Lewis, 351 N.E. 2d 526, Mass. 1976; Hosko v. Hosko, 385 Mich. 39, 187 N.W. 2d 236, 1971; Beaudette v. Frana, 285 Minn. 366, 173 N.W. 2d 416, 1969; Rupert v. Stienne, 90 Nev. 397, 528 P. 2d 1013, 1974; Thompson v. Thompson, 105 N.H. 86, 193 A. 2d 439, 1963; Immer v. Risko, 56 N.J. 482, 267 A. 2d 481, 1970; Maetas v. Overton, 87 N.M. 213, 531, P. 2d 947, 1975; Jacobs v. United States Fidelity & Guaranty Co., 2 Misc. 2d 428, 152, N.Y.S. 2d, 1956; Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526, 1932; Courtney v. Courtney, 184 Okl. 395, 87 P. 2d 660, 1930; Pardue v. Pardue, 167 S.C. 129, 166 S.E. 101, 1932; Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266, 1941; Surratt v. Thompson, 212 Va. 191, 183 S.E. 2d 200, 1971;

Richard v. Richard, 131 Vt. 98, 300 A. 2d 637, 1973; Freehe v. Freehe, 81 Wash. 2d 183, 500 P. 2d 771, 1972; see Annot., 43 A.L.R. 2d 698, 1955. It is perhaps redundant to add that most commentators oppose the doctrine.

"In addition to the above we note that Maine has recently abrogated the doctrine of interspousal immunity. MacDonald v. MacDonald, 412 A. 2d 71 Me., 1980, overruling Abbott v. Abbott, 67 Me. 304, 1877, holding that a person injured by the tortious conduct of another person was not precluded from asserting liability against the tortfeasor in a civil action solely because the tortious conduct occurred while they were married to each other.

"In a highly publicized case, Massachusetts has also recently abrogated this hoary doctrine in a civil action. Brown v. Brown, Mass. 1980 (citation not available until case reported) involved a fall by the wife on property owned with the husband as tenants by the entirety. Extending their prior holding in Lewis v. Lewis, 370 Mass. 619, 1976, which had held interspousal immunity inapplicable to personal injury actions arising out of motor vehicle accidents, the court observed:

"Our opinion in the Lewis case adequately described the 'antediluvian assumption' that supported the common law rule of interspousal immunity, the trend toward judicial abrogation, the criticism of commentators, and the unpersuasive character of the reasons of modern public policy sometimes advanced in support of the rule. Our research indicates that only 16 states still adhere to the rule of interspousal immunity.

"Within the past two years Iowa (Shook v. Crabb, 281 N.W. 2d 616, Iowa 1979); Nebraska (Imig v. March, 203 Neb. 537, 279 N.W. 2d 382, 1979); New Jersey (Merenoff v. Merenoff, 76 N.J. 535, 388 A. 2d

951, 1978) and West Virginia (Coffindaffer v. Coffindaffer, 244 S.E. 2d 338, W. Va., 1978) (discussed above) have either abrogated the doctrine wholly or limited it in part. Accordingly, it appears that the time is ripe for review by our highest court."

Finally, this court is now deluged with Abuse Act cases, which is but a legislative declaration of the right to bring certain actions between a husband and wife.

Over seven years have passed (a short period in the history of law but a long period in the history of immunity law) since the decision in DiGirolamo.

As the states fall into line in abolition of the doctrine, if the law is (in Holmes' phrase) a "prophecy of what the courts will do in fact" then the time has come to abolish the doctrine regarding intentional torts.

The viability of the doctrine relative to negligent torts must await another day.

## ORDER OF COURT

And now, February 13, 1981, it is ordered, adjudged and decreed: defendant's preliminary objections are dismissed and he shall answer the complaint within 20 days from this date.