[Civ. No. 6128. First Appellate District, Division Two.—February 20, 1928.]

CHARLES HOROWITZ, Respondent, v. OLGA SACKS, etc., et al., Appellants.

Joseph P. Sproul and Henry G. Bodkin for Appellants.

Halverson & Price for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to recover a judgment for damages, alleging that defendants had alienated the affections of his wife. The defendants appeared and answered and a trial was had in the lower court before the court sitting with a jury. The jury returned a verdict in the sum of fifteen thousand dollars in favor of the plaintiff. A motion for a new trial was made and the trial court made a conditional order that unless the plaintiff waived ten thousand dollars the motion would be granted, otherwise denied. The plain-

tiff thereupon filed a stipulation consenting to the reduction and the motion for a new trial was denied. Thereafter the defendants appealed from the judgment under section 953a of the Code of Civil Procedure.

It was the theory of the plaintiff in the presentation of his case that the defendants entered into a conspiracy unlawfully and maliciously to alienate the affections of his wife Bessie Horowitz, and that thereafter and on the twenty-first day of April, 1924, they did unlawfully and maliciously abduct the said Bessie Horowitz, and from that time on did unlawfully and maliciously alienate the affections of the said Bessie Horowitz, his said wife, to his damage in the sum of thirty-five thousand dollars.

The defendants are Olga Sacks, the mother of Bessie Sacks, who is the same individual as Bessie Horowitz, the wife of the plaintiff; Bessie's brother Abraham Sacks, and his wife, Sarah Sacks; Bessie's brother Ben and his wife, Betty Sacks, and also Bessie's sister, Etta Sacks. It was the theory of the defendants that Bessie at the time of her marriage and for several years prior thereto was demented; that at the time of their engagement, and continuously thereafter, no affection existed between Mr. and Mrs. Horowitz; that by fraudulent practices Mr. Horowitz fraudulently abducted Bessie, a demented girl, for the purpose of getting possession of her money; that Mr. Horowitz had no affection for his wife and therefore was not damaged in any sum whatsoever; and that the defendants did what they did, not maliciously, but for the sole purpose of protecting one of their kith and kin who was otherwise without any protector whatsoever.

Before proceeding to take up the particular points made by the defendants some of the evidence should be stated. The father of Bessie Sacks died in 1915. On or about the fourteenth day of February, 1924, Mr. Horowitz went to the house where Mrs. Olga Sacks, her daughter Bessie and her daughter Etta resided. That house was 1913 Brooklyn Avenue. He made the call on the ostensible mission of a real estate deal. After obtaining entrance to the house he had a conversation with Bessie. In that conversation he stated to her that he had had a dream in which her father had appeared unto him and had directed him to go to that house and there he would see a young girl with long black

hair, whom he should marry. Before Mr. Horowitz left the house he and Bessie were engaged. When Bessie's brothers learned of the engagement they asked the plaintiff for references. He promised to furnish them but from time to time delayed doing so. On the fifth day after the engagement Mr. and Mrs. Horowitz were married. When her brothers next asked for references the plaintiff said, "I don't have to give you any addresses now I am married." A day or so after the marriage the plaintiff moved his trunk into the house formerly occupied by Mrs. Olga Sacks and her daughters, and, when the mother-in-law remonstrated, the plaintiff informed her that the house belonged to his wife, that he was entitled to occupy it with her, and, in effect, he further advised Mrs. Sacks that if anyone was to remonstrate it was the plaintiff. Thereafter Mrs. Sacks moved out and took up a residence on Michigan Avenue. On the twenty-first day of April, 1924, according to the testimony of the plaintiff, Ben Sacks called at the house of the plaintiff and his wife and took them with him for an automobile ride. Later Abraham Sacks and his wife were picked up. Still later they drove to the mother's house on Michigan Avenue. Those in the house came out and Mrs. Horowitz was taken into the house, but Mr. Horowitz was left outside. There is a great deal of conflict in the evidence as to how much force was used.

After the trial the plaintiff changed his attorneys and the defendants also changed their attorneys. When the case was called in this court for argument the plaintiff earnestly contended that the brief of the defendants contained misstatements of the record. On being asked to specify, counsel kindly cited passages. As to whether such passages are supported by the record or are not supported by the record, we will not take time to discuss. On the other hand, we will pass those matters by and discuss only those portions of the record that are not at all in dispute.

■ It is settled law that the abduction of a wife from her husband, or a child from its parent, is actionable whether the abduction is done by force or by use of persuasion. (Civ. Code, sec. 49; *Humphrey* v. *Pope*, 122 Cal. 253, 256 [54 Pac. 847].) ■ Whether the alleged act was committed by the use of force or the use of persuasion a material point of inquiry is the intent with which the defend-

ant has acted. It must appear that the defendant has acted with improper motives. The decisions require a much stronger case to be made out where the defendant is a parent of the spouse alleged to have been abducted. (*Cripe* v. *Cripe,* 170 Cal. 91, 93 [148 Pac. 520] ; *Bourne* v. *Bourne,* 43 Cal. App. 516, 533 [185 Pac. 489].) Without becoming liable a mother may advise her child in good faith as to the child's domestic affairs, especially when the offspring is an infant or of unsound mind. (30 C. J. 1130.) The same right extends to persons *in loco parentis.* (30 C. J. 1131.)

 As the complaint charges a conspiracy against all of the defendants, the existence of anything which justified the mother in bringing about the separation will excuse the acts of the other defendants. (*Barton* v. *Barton,* 119 Mo. App. 507 [94 S. W. 574, 581].)

 The witness Benjamin Sacks testified that when he asked the plaintiff for references as to his character the plaintiff made the remark, "Go ahead and trace me if you want to find out." That statement was made by the plaintiff in the presence of the plaintiff's wife, of the witness and some other persons. Thereupon the witness was asked what was said. "A. I asked Bessie whether she knew who this man was; she said he told her he was a very wealthy man, always carried a lot of money around with him, that he was a contractor and builder and that he was going to build twenty houses at one time and that they were both going into the real estate business together; and then I asked her if she knew who he was. Then she said well he was going to give me some addresses to write to." On motion the answer was stricken out. As the testimony was with reference to statements made by Mrs. Horowitz in the presence and hearing of her husband, the answer should not have been stricken out. (Code Civ. Proc., sec. 1870, subd. 3.)

 In points four, five, six, twelve, thirteen, and fourteen the defendants challenge more than twenty-eight rulings on the admission and exclusion of evidence. An examination of the record discloses that many other similar rulings were subject to the same attacks. It will serve no useful purpose to attempt to enumerate each one of these rulings. From the questions propounded by the defendants it is clear that they sought to prove that the insanity of Bessie Horowitz was a condition existing from birth.

The court sustained objections, or granted motions to strike out, and declined to consider any evidence prior or subsequent to the date of the marriage. When defendants sought to show the bodily health of the same individual at different periods of time, the same rulings were made. When they sought to show the condition of her nerves at different periods of time, the same rulings were made. The evidence disclosed that Mrs. Horowitz at times was most unnaturally exhilarated and at other times most decidedly melancholy. Claiming that the condition had existed from birth and that the condition was evidence of unsoundness of mind, the defendants sought to introduce the proof. Objections thereto were interposed by the plaintiff, or motions to strike out were made, and the rulings were all against the defendants. In their endeavor to show the insanity of Mrs. Horowitz they called many witnesses, and having shown such witnesses to be intimate acquaintances, they propounded questions to such witnesses' asking for their opinions respecting the mental sanity of Mrs. Horowitz. (Code Civ. Proc., sec. 1870, subd. 10.) In nearly every instance the evidence was ruled out. In justification of the ruling it is asserted that the individual was not an intimate acquaintance. An examination of the record discloses that the rulings are not sustained by the facts. When the nature of the issue is considered it is patent that the rulings mentioned were erroneous and highly prejudicial to the rights of the defendants.

Mrs. Fannie Black was called as a witness by the defendants and testified as follows: "I have known Mr. Horowitz since the first day he came to Los Angeles. It was a year ago last February. He came to my house. I had a vacant room and he came and asked for it. He stayed there just one month. I had a conversation with Mr. Horowitz with respect to his getting married. The first thing he came in he started talking about his marriage. That was the first day he came to my house. I never knew him before that. Q. What did he say? The Court: But I do not see any relevancy in testimony that is called for by the question. It doesn't help the jury to determine whether the husband's wife's affections were alienated. Mr. Engelhardt: It is introduced for the purpose of showing a motive for getting married. Mr. Redmond: I object to it. The Court: The objection must be sustained. Mr. Bear-

man: The testimony of this witness is offered, your Honor, for the purpose of showing that Mr. Horowitz made statements that he did not care whom he married, as going to show whether there was any affection to be alienated. The Court: The objection has been sustained. Q. Did he talk to any other woman in your presence? A. Well, outside anybody passing the street he asked everybody if they knew any woman with money. Mr. Redmond: I object to that as incompetent, irrelevant and immaterial, and move to strike out the latter part of the answer. The Court: The objection is sustained.'' A most cursory reading of the foregoing proceedings shows, we think, that the evidence offered was relevant as to whether the plaintiff had abducted from her family Bessie Sacks, under the false and fraudulent pretense that he was sent by her deceased father to take her in holy wedlock.

Dr. George B. Walroth was called as a witness on behalf of defendants and testified as follows: ''My name is George B. Walroth. I am licensed to practice in the state of California. I have been practicing in Los Angeles for thirty years. I know Bessie Horowitz, formerly Bessie Sacks, and have known her twenty years. I have had occasion to treat her at various times. Within a week after her marriage I was at the home of Bessie Horowitz and her husband. I do not know what time of day it was. Bessie, her husband, Bessie's mother and her brother Abe were present. I called professionally and I observed her condition. I observed her mental condition. Q. What was it? Mr. Redmond: I object to that as incompetent, irrelevant and immaterial and not within the issues. The Court: The objection is sustained. Mr. Engelhardt: Q. Was she rational or irrational at that time? Mr. Redmond: I make the same objection and no foundation laid as to the qualification of the witness. The Court: The objection is sustained. Witness continuing: I have had experience in treating nervous conditions and experience in treating mental conditions. I had that experience in Los Angeles. I have had no special training in mental work. I have treated a number of cases of mental diseases in the ordinary course of a general practice extending over a period of thirty years. At the time I was there I examined Bessie Horowitz. I talked to her. Q. What did she talk about?

A. She talked in a rambling way about everything. Mr. Redmond: I object to that answer as not responsive and incompetent, irrelevant and immaterial. The Court: Strike it out. Mr. Engelhardt: Q. From the conversation you had with her and the examination you made, would you be able to testify whether at that time she was rational or irrational? Mr. Redmond: I object on the ground that there is no proper foundation laid as to the qualifications of the witness. It is a conclusion of the witness. It is incompetent, irrelevant and immaterial and not within the issues. The Court: The objection is sustained.''

Similar questions, objections and rulings were made with reference to subsequent visits and finally the trial court stated: ''The Court: You need not ask the question. The ruling will be the same. As I understand it, under the law, the only times when a person can give information on that subject are when he is a personal acquaintance who comes in frequent contact with the person, such as members of the family, and the doctor does not come within that classification. The other class of testimony of that character is an expert in mental diseases who has had experience and claims to be an expert in that line, and the doctor does not make any claim, according to his testimony, to be an expert and is not qualified. The objection will be sustained.''

The reasons assigned by the trial court for its rulings were not applicable to the facts before it. On the record as made the witness had qualified himself both as an intimate acquaintance and as an expert. If counsel had desired to weaken his testimony the plaintiff should have asked permission to take the witness and cross-examine him.

■ At this time the plaintiff asserts for the first time that the doctor's testimony was privileged. (Code Civ. Proc., sec. 1881.) However, there is no doubt the rulings were erroneous. All of the information the witness obtained from his patient was obtained in the presence and hearing of three third parties, the husband, mother, and brother of the patient. Such communications of the patient were not confidential and therefore were not privileged. (Code Civ. Proc., sec. 1881; *Gallagher* v. *Williamson,* 23 Cal. 331, 333 [83 Am. Dec. 114]; *Hager* v. *Shindler,* 29 Cal. 47, 64; *Sharon* v. *Sharon,* 79 Cal. 633, 678 [22 Pac. 26]; *Ruiz* v. *Dow,* 113 Cal. 490, 498 [45 Pac. 867]; *Murphy* v. *Board*

*of Police etc. Commrs.*, 2 Cal. App. 468, 470 [83 Pac. 577]; 4 Jones on Evidence, sec. 761; Wigmore on Evidence, sec. 2292.)

If the plaintiff had made the specific objection that the communications made to the witness were privileged, it would appear from the record the privilege could either have been fortified or removed speedily. Mrs. Horowitz attended the trial and was called as a witness by defendants. She was not asked to give her consent that Dr. Walroth might be examined and might answer the questions recited above because the specific objection was not made. Furthermore, the record discloses affirmatively that neither court nor counsel considered that the objection as made involved the provisions of section 1881 of the Code of Civil Procedure.

Because of the errors enumerated above the judgment is reversed.

Koford, P. J., and Nourse, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 19, 1928.

All the Justices concurred.