[Civ. No. 20750. First Dist., Div. Three. Oct. 22, 1963.]

KELLY ROSEFIELD, a Minor, etc., et al., Plaintiffs and Appellants, v. MARVIN ROSEFIELD, et al., Defendants and Respondents.

Ericksen, Ericksen & Kincaid and Richard D. Bridgman for Plaintiffs and Appellants.

Weinmann, Rode, Burnhill & Moffitt and Ralph N. Mendelson for Defendants and Respondents.

DEVINE, J.—General demurrer, on the ground that no cause of action was stated, was sustained with leave to amend, but plaintiffs declined to amend. Judgment for defendant Marvin Rosefield was entered, and plaintiffs appeal. The complaint, by Kelly Rosefield, a minor, by her guardian ad litem and by Manon Rosefield, her mother, is directed against Marvin Rosefield, the child's grandfather who is the mother's father-in-law, and also against Robin Rosefield, the child's father and the husband of the other plaintiff. The latter has not been served with process and has not appeared. The sole respondent is Marvin Rosefield.

The facts alleged are these: Kelly Rosefield is the daughter of Manon and Robin Rosefield, and was about two and one-half years old at the time the complaint was filed in 1962. The parents separated shortly after their marriage in 1959, and before the birth of Kelly. The mother had the physical custody of the child at all times until the asserted abduction in 1961. In 1960, Robin induced his wife to enter a condition-

al reconciliation for the express benefit of the daughter. In February 1961, Robin and Marvin Rosefield, respondent, wilfully, fraudulently and maliciously abducted Kelly from her mother, Manon, and do now harbor, secrete and conceal her from Manon, and do deprive Manon of the society and services of Kelly. Conspiracy to do these things is alleged in one count. Manon has been put to expense of about $5,000 in endeavoring to locate the child, and will be put to more expense. Compensatory and exemplary damages are sought.

Kelly, by her guardian ad litem, makes similar allegations and seeks damages against respondent, Marvin Rosefield. Of course, Kelly is missing, according to the complaint, and her mother makes these allegations for her. The superior court in Alameda County awarded the legal care and custody of Kelly to Manon in April 1961, but by that time the child had been taken away and concealed.

Respondent's brief contains statements warmly denying the allegations and declaring that the mother is seeking revenge against her husband by tying his father into the complaint, but these must be disregarded at this time. By demurring, respondent must admit the allegations for the present.

Three causes of action are contained in the complaint: the first, against respondent for direct participation in the acts; the second, for conspiracy; and the third, by the child. Respondent would have it that the mother's two counts are based on conspiracy, but this is not so, despite the fact that the word "conspire" appears in the count which alleges direct participation by respondent. Essentially, the two counts are distinct.

### The Count Charging Direct Participation

Respondent is a third party, who had no right to have custody of the child, or to decide who should actually have custody. It is argued that if the father had the right to take the child, absent a court order, it cannot have been wrong for a third person to help him to take her. This we do not find persuasive. The actions of the third party, as alleged, did not simply help the father to gain custody of the child, as from a stranger, but effectively deprived the mother of a right, elemental and of value inestimable, which she, too, had.

Section 49 of the Civil Code forbids the abduction of a child from a parent. This proscription, we believe, is not lifted from a third person merely because his acts are conjoined with those of the father who, unless a court has acted, has equal rights with the mother. It is not the office of the

third person to make the decision in fact, though not in law, as to custody, and to make ineffectual the later decree of the court.

A tenant in common of personal property may recover damages against a third person who disposes of his share wrongfully. (86 C.J.S., Tenancy in Common, § 138, p. 542; *Conolley* v. *Power,* 70 Cal.App. 70, 76 [232 P. 744].) There seems to be no reason why a parent cannot recover from a third person if she can prove the greater wrong of taking a child, even though the loss is not a divisible thing for measurement in damages, as is the loss of common property.

In *Wilborn* v. *Superior Court,* 51 Cal.2d 828 [337 P.2d 65], it was held that although a parent may not be guilty of kidnapping his own child, one who assists him may be so guilty. Four of the cases cited in respondent's brief (*State of Louisiana* v. *Elliott,* 171 La. 306 [131 So. 28, 77 A.L.R. 314]; *People* v. *Nelson,* 322 Mich. 262 [33 N.W.2d 786]; *State of Iowa* v. *Dewey,* 155 Iowa 469 [136 N.W. 533, 40 L.R.A. N.S. 478]; *People* v. *Workman,* 94 Misc. 374 [157 N.Y.S. 594]) are cited and rejected in the *Wilborn* opinion (p. 830).

It is true that in the *Wilborn* case one reason given for the decision is : ''If a child be taken or enticed away from one parent by the other parent, the mental anxiety of the parent who loses the child would not ordinarily be nearly so great as where the child passes into the hands of one having no parental obligations toward the child'' (51 Cal.2d at p. 831); and that at the time of the immediate abduction of Kelly Rosefield, the father took her custody, but it cannot be known whether the father now exercises parental control. This may have been passed on to a stranger. Anyway, it is alleged that respondent Marvin Rosefield now conceals the child, and it does not necessarily follow from similar allegations against the father that the latter is exercising care for her.

Respondent argues that no specific act is alleged against him, but it is directly alleged that he (with Robin) wrongfully abducted, harbors, conceals and secretes the child from plaintiff Manon. If something more specific were to have been demanded, it should have been raised by special demurrer.

A cause of action has been stated by the mother for respondent's participation in the carrying away of the child.

### The Conspiracy Count

Having decided that a cause is stated for respondent's direct acts, we turn to the subject of conspiracy, which

must be discussed because of this practical effect which may follow from this theory: if the conspiracy theory is a valid one, then, upon proof of the conspiracy, respondent will be liable for the acts of his coconspirator.

Respondent argues thus: Conspiracy is not an independent delict. It is actionable only if what was conspired to have been done was itself a wrong. But for a father to take his child away from the mother, in the absence of a court order, is not a wrong. Therefore, a charge of conspiracy cannot be made against the party who agrees or contrives with the father to take the child.

█ We believe that it was a legal wrong for the husband and father to abscond with the child, and that respondent would be liable in damages even for the father's actions, if conspiracy were shown. Of course, not every transportation of a child by one parent causing the other parent some loss of custody and association with the child would be wrongful. If, however, one parent makes away with the offspring, removes it effectually from judicial control, conceals it, and leaves the other parent utterly bereft of the means of enjoying any of the privileges of parenthood, it is folly to say that the decamping parent is merely exercising his "equal right" to the custody of the child. There is no equality about it.

The case seems to be without precedent, but this does not mean that what is obviously an invasion of a mother's legal right is not a legal wrong. █ The concept that there are no causes of action except those that have been recognized by precedent, assumed at some point in the common law, was not accepted generally at early common law, nor is it accepted today. (Keeton, *Creative Continuity in the Law of Torts* (1962) 75 Harv.L.Rev. 463, 488, n. 62; 2 Witkin, Summary of California Law, Development of New Torts, § 5, p. 1173.)

█ Statutory basis, however, is not lacking. Civil Code section 1708 requires that every person abstain from infringing upon any of the rights of another person. One of the highest rights has been infringed upon according to the pleading in this case.

Respondent cites *Simmons* v. *Simmons* (D.C.E.D.S.C. 1941) 41 F.Supp. 545, as presenting almost identical facts, and as producing a decision against the mother. The case was in the federal district court on diversity of citizenship, and the court applied what it deemed to be (for that case was completely novel) the law of South Carolina. That state recognized no rift between spouses as being sufficiently to justify

action between them, as for divorce, and the court reasoned that an interspousal action for damages for taking the child would interfere with the marital relationship, and would be against public policy. We do not regard the case as expressing the law of this state, and even if it were to be held that policy would prevent prosecution of the action by spouse against spouse, it must be remembered that at present our direct concern is with an action against a third person, and with the acts of the father as related thereto, not with the action against the father.

Respondent also cites Restatement of the Law of Torts (1938) section 700, comment (c), which states that when the parents are jointly entitled to a child's custody, no action for abduction can be brought against one by the other. This does not state that it is not a legal wrong for one parent to appropriate the child to himself, but that interspousal action will not lie, and, therefore, does not affect an action against a third person. Besides, interspousal immunity was common law rule and the majority rule when the original Restatement was written, as it was the rule in California, but this is no longer the rule in this state (*Self* v. *Self*, 58 Cal.2d 683 [26 Cal.Rptr. 97, 376 P.2d 65]; *Klein* v. *Klein*, 58 Cal.2d 692 [26 Cal.Rptr. 102, 376 P.2d 70] [decisions subsequent to the judgment which was rendered in the case before us]), or in many others (cases collected in 43 A.L.R.2d 632).

## The Child's Cause of Action

In considering the action of the child against respondent, we observe again that the case before us presently is the one against Marvin Rosefield, not against the child's father. Although the father is a defendant, and respondent again emphasizes the role of the father, the case against the father and the defenses which he might have to it are not before us. Also, the practical difficulties of presenting the cause of this infant—of showing damages, for instance, when the child's whereabouts and circumstances are unknown to the mother—do not concern us now. The question is whether the child, by her guardian ad litem, states a cause of action against respondent.

We believe she does so. The child is entitled to the society and care, and protection and affection of her mother. The acts of respondent as alleged have deprived her of these rights. If respondent had taken the child and placed her with strangers, we think it clear that a right of the child had been taken away. The fact that the father participated does not change matters so far as the child's rights are concerned,

though it may bear on damage.

Respondent argues that section 49 of the Civil Code, which forbids abduction of a child from a parent, could only give a right to the parent entitled to custody. He cites *Rudley* v. *Tobias*, 84 Cal.App.2d 454 [190 P.2d 984], in which it was held that a child does not have a cause of action against a woman who maliciously entices the father from the household. This holding was based on the "heart balm" legislation of 1939, which, among other things, deleted from section 49 the declaration that among the acts contrary to the rights of personal relations was "[t]he abduction . . . of a parent from his child." The case before us is not one of abduction of a parent, but abduction of the child, brought against an alleged participant in the abduction. In the case of the parent's "abduction," an element of consent of a responsible person, the parent, is present; in the case of the child's, particularly one of the age of two and one-half, there is no such consent. Respondent here has not, as did defendant in the *Rudley* case, taken the affections of the parent from the child; indeed, appellant's complaint alleges that she has gone to much expense in trying to regain her daughter.

Also distinguishable is *Haldane* v. *Bogy*, 208 Cal.App.2d 298 [25 Cal.Rptr. 389], in which plaintiff had been deprived of the custody of the children by previous decree of the court, but attempted to bring action on their behalf. The action was considered, apparently, as an alienation of affections case.

A child has a right of action against its parent for a wilful and malicious tort. (*Emery* v. *Emery*, 45 Cal.2d 421 [289 P.2d 218].) If there is not parental immunity for such a wrong, surely there is none for a third party.

It is not essential to the child's action that she bring her cause under section 49 of the Civil Code. The general principle of liability is that for every wrong there is a remedy. (Civ. Code, § 3523; *Emery* v. *Emery, supra*, p. 430.) If the case factually is as the pleading states it to be, the child has been deprived of her mother. For this, we believe she has stated a cause.

Judgment reversed.

Draper, P. J., and Salsman, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 18, 1963. Schauer, J., was of the opinion that the petition should be granted.