Filed 4/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DOLORES TARIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROCHELLE LIND et al.,<br><br>    Defendants and Respondents. | B295708<br><br>(Los Angeles County<br>Super. Ct. No. BC647463) |

    APPEAL from a judgment of the Superior Court of Los Angeles, Elizabeth Allen White, Judge. Affirmed.

    Clark & Trevithick and Raimund Freihube for Plaintiff and Appellant.

    Law Offices of Mark D. Licker and Mark D. Licker for Defendants and Respondents.

_____

Plaintiff and appellant Dolores Tarin (Dolores) appeals from the judgment after the trial court granted three judgments on the pleadings in favor of defendants and respondents Rochelle Lind (Rochelle) and Jesse Tarin (Jesse)[1] (collectively, defendants), and Dolores dismissed her remaining claims. Dolores alleged that defendants interfered in Dolores's relationship with her mother, Lucy Torres (Lucy), "by . . . unduly influencing [Lucy] and distorting her understanding and perception" of Dolores "such that [Lucy] would fully reject and exclude" Dolores "from her life." Dolores alleged that she suffered emotional harm from the deprivation of "the society, care and affection" of her mother.

We agree with the trial court that Dolores's allegations failed to state a cause of action. Over 80 years ago, the Legislature amended the Civil Code to omit a cause of action for parental abduction, including by persuasion or enticement, and to bar claims for alienation of affection. We conclude, in line with case precedent, that the Legislature thereby removed from California law the right of action asserted by Dolores here. It is immaterial that Dolores asserted her claims under multiple theories, including intentional infliction of emotional distress, loss of parental consortium, elder abuse of Dolores (who is older than 65 years), and false light invasion of privacy, because all were based on allegations that defendants turned Lucy against Dolores, and all harms flowed from Lucy's severing ties with Dolores.

---

[1] Because Dolores and Jesse share a last name, we refer to them by their first names, and do the same with the other involved individuals for consistency's sake. We intend no disrespect.

2

Although our Supreme Court has recognized the tort of intentional interference with parental consortium, the case the high court cited in support of such a cause of action involved the physical kidnapping of a two-year-old child from her mother, and is readily distinguishable from the instant case.

We further conclude that the trial court did not abuse its discretion in denying Dolores's request for a five-day continuance after granting the third judgment on the pleadings. Accordingly, we affirm.

## BACKGROUND

### A.     The First Amended Complaint

#### 1.     Structure of the pleadings

As an initial matter, the structure of the pleadings in this case requires some explanation. The original complaint listed two plaintiffs, Dolores and Erik Encinas (Erik), who is not a party to this appeal. The first amended complaint (FAC), the operative pleading for purposes of this appeal, while ostensibly listing Erik as a plaintiff as well, includes only causes of action brought by Dolores alone, and only Dolores is named in the prayer. The FAC omits the sixth and seventh causes of action from the original complaint, which were unique to Erik. The FAC states, however, that the sixth and seventh causes of action from the original complaint, while not restated in the FAC, "remain unchanged" and "are not superseded" by the FAC. It appears, therefore, that the plaintiffs' intention was for Erik to proceed under the original complaint and Dolores to proceed under the FAC. Dolores represents that Erik has since dismissed his claims.

Further complicating matters, the FAC does not renumber the causes of action to reflect the omission of Erik's causes of action, instead skipping the sixth and seventh and labeling what are actually the sixth, seventh, eighth, and ninth causes of action as the eighth, ninth, tenth, and eleventh causes of action. Although we do not endorse this approach, nor the splitting of causes of action between two complaints, we will follow the FAC's numbering for purposes of this appeal.

### 2. Facts alleged

We summarize the facts alleged in the FAC.

Dolores and Jesse are Lucy's adult children. Rochelle is Jesse's daughter and Lucy's granddaughter, and served as Lucy's conservator. Erik is Lucy's grandson.

In January 2015, following years of estrangement, Dolores began regularly visiting Lucy. "These regular visits . . . became a reunification and re-bonding between mother and daughter." On or about July 10, 2015, Lucy "stated she wanted to call her lawyer and amend her trust to include" Dolores.[2]

Also beginning on or about July 10, 2015, Rochelle "engaged in an intentional course of conduct over the following year to cause severe emotional distress" to Dolores "by . . . unduly influencing [Lucy] and distorting her understanding and perception" of Dolores "such that [Lucy] would fully reject and exclude" Dolores "from her life."[3] Rochelle attempted to convince

---

[2] None of the FAC's causes of action concerns Lucy's trust.

[3] The FAC alleged that some of Rochelle's actions were directed not only at Dolores but also at Erik, and Dolores and Erik suffered some of the same harms. Because Erik is neither party to this appeal nor included in any of the FAC's causes of

4

Lucy to change her trust to favor Rochelle and Jesse, falsely represented to Lucy that Dolores caused Lucy's caretaker to resign, unsuccessfully attempted to convince Lucy to sign restraining order papers against Dolores, compelled Lucy to sign new powers of attorney and advance health care directives naming Jesse as primary agent instead of Dolores, and falsely told Lucy that Dolores was trying to put Jesse in jail, which led to an unwell Lucy going to court on February 24, 2016 to try to testify on Jesse's behalf.  "[T]he trauma of going to court . . . , based on an intentional misrepresentation by [Rochelle], stirred anger and resentment in [Lucy] against [Dolores]," causing Lucy to "sever[ ] her relationship[ ] with [Dolores] . . . per the plan of [Rochelle]."

From February 24, 2016 until Lucy's death later that year, Rochelle blocked all visits and communication between Lucy and Dolores.  Rochelle did not timely inform Dolores when Lucy died, attempted to exclude Dolores from Lucy's funeral, and prevented Dolores from viewing Lucy prior to her burial.

### 3.    Causes of action

The FAC asserted nine causes of action, numbered first through eleventh with the sixth and seventh skipped, as explained above.  The first was against Rochelle for intentional infliction of emotional distress, alleging, "[Rochelle's] intentional conduct in interfering in the relationship between [Lucy] and [Dolores], in making false statements about [Dolores] to [Lucy], in agitating [Lucy] against [Dolores] such that [Lucy] would sever all relations with [Dolores] and refuse to have any further contact

---

action, for simplicity we summarize the allegations only as they pertain to Dolores, omitting reference to Erik.

with [Dolores], in coercing [Lucy] to execute subsequent health care directives excluding [Dolores] immediately on the heels of the same freely executed by [Lucy] naming [Dolores] as agent[ ], continuing to exclude [Dolores] from [Lucy] for the remainder of her life, preventing [Dolores] from seeing [Lucy] . . . , failing to timely inform [Dolores] of the death of [Lucy], attempting to prevent [Dolores] from seeing [Lucy] one last time at the funeral, and other heinous conduct was done with the intent to cause severe emotional and physical distress, humiliation and mental anguish in [Dolores]."

The second cause of action was against Rochelle for intentional interference with parental consortium, alleging that Rochelle "intentionally deprived [Dolores] of the society, care and affection of [Lucy] by intentionally interfering in the mother-daughter relationship and causing it to be severed." The second cause of action summarized the conduct severing the mother-daughter relationship, much of it materially identical to the first cause of action, including false statements, agitating Lucy against Dolores, "unduly influencing [Lucy] to believe that [Dolores] w[as a] bad p[erson]," coercing Lucy to change her health care directives, preventing Dolores from seeing Lucy, and attempting to exclude Dolores from Lucy's funeral.

The third cause of action was against Rochelle and Jesse for conspiracy, alleging they conspired to interfere with and sever the relationship between Lucy and Dolores "for the purpose of causing harm to [Dolores] as set forth in the First and Second Causes of Action."

The fourth cause of action was against Rochelle for elder abuse, alleging that Dolores was "an elder within the meaning of Welfare and Institutions Code section 15610 et seq.," meaning

6

she was "65 years of age or older." (Welf. & Inst. Code, § 15610.27.) The fourth cause of action, like the second cause of action, referred to Dolores's right to have "the society, care and affection of" Lucy, and alleged that Rochelle's earlier described misconduct constituted abuse under Welfare and Institutions Code section 15610.07.[4]

The fifth cause of action was against Rochelle for false light invasion of privacy, alleging that Rochelle had made false statements about Dolores to Lucy, including that "[Dolores] was putting [Jesse] in jail, that [Dolores] was a bad person, that [Dolores] was not properly caring for [Lucy], that [Dolores] was the reason [Lucy's caretaker] stopped caring for [Lucy], that [Dolores] would disrupt the care and life of [Lucy] . . . and that [Dolores] was a danger and should be kept away by a restraining order." The cause of action alleged that "[t]he foregoing statements . . . placed [Dolores] in a false light in the public eye in that [Lucy] severed all contacts with" Dolores. "The false representations . . . were offensive and objectionable to [Dolores] and to a reasonable person of ordinary sensibilities in that the representations caused, and were done with the intent to cause, the complete disruption of the mother-daughter relationship

_____

[4] Welfare and Institutions Code section 15610.07, subdivision (a) defines " '[a]buse of an elder or a dependent adult' " as "(1) Physical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering. [¶] (2) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering. [¶] (3) Financial abuse, as defined in Section 15610.30."

7

between [Dolores] and [Lucy], and made [Dolores] the object of scorn and contempt by [Lucy]."

The eighth, ninth, and tenth causes of action were against Jesse for assault, battery, and domestic violence, respectively, stemming from an alleged incident in which Jesse "struck [Dolores] in the face." The eleventh cause of action alleged conspiracy between Rochelle and Jesse to commit the assault, battery, and domestic violence.

## B.    Relevant Proceedings Below

On April 24, 2018, the trial court granted Jesse's motion for judgment on the pleadings against the tenth cause of action for domestic violence and the eleventh cause of action for conspiracy, although the eleventh cause of action remained against Rochelle. That ruling is not at issue in this appeal.

On July 16, 2018, the trial court granted Rochelle's motion in limine regarding the second cause of action for intentional interference in parental consortium, which the trial court construed as a nonstatutory motion for judgment on the pleadings. The trial court concluded that Dolores had not stated a cause of action because only a minor child could bring an intentional interference claim. The trial court noted an absence of case authority allowing an adult child to do so, and BAJI jury instruction No. 7.97.1's repeated references to a minor child. The trial court further stated that "where the parent is no longer the sole provider for the adult child, such a cause of action would be meaningless. Furthermore, such a cause of action could give rise to numerous claims by children against . . . third parties, e.g. a subsequent spouse of a parent who arguably interferes in the relationship of the stepchild with the parent."

8

On July 27, 2018, defendants filed a "request in limine" asking the trial court sua sponte to grant judgment on the pleadings against the first, third, fourth, and fifth causes of action, for intentional infliction of emotional distress, conspiracy, elder abuse, and false light invasion of privacy. Defendants contended those causes of action "are legally meaningless redundancies of the Second Cause of Action" and "should be dismissed on the same grounds."

Dolores sought a writ of mandate in this court reversing the dismissal of the second cause of action, which we summarily denied on August 29, 2018. The Supreme Court denied review of our ruling on October 10, 2018.

At the start of trial on November 6, 2018, the trial court heard argument and granted defendants' request for a judgment on the pleadings against the first, third, fourth and fifth causes of action. The trial court stated that "when you relabel a cause of action intentional infliction of emotional distress and you're seeking to obtain the same damages that the court has prevented you from obtaining by virtue of the fact that you can't proceed on parental loss of consortium, it's a backdoor way around the court's ruling [dismissing the second cause of action]." The court concluded that the first five causes of action "are all arising out of the same primary right."

The trial court asked if the parties were prepared to proceed on the eighth, ninth, and eleventh causes of action for assault, battery, and conspiracy to commit assault and battery. Dolores's counsel asked for "a day or two" to confer with his client and check the availability of witnesses. After speaking briefly with his client, Dolores's counsel modified his request and asked for a week to research whether proceeding on the remaining

9

causes of action would create collateral estoppel issues should the dismissed causes of action be revived on appeal.

Following further discussion, the trial court stated it was "puzzled" by counsel's concern with collateral estoppel, but ultimately offered a two-day continuance. Dolores's counsel replied, "Then I have no choice," and requested dismissal without prejudice of the eighth, ninth, and eleventh causes of action, which the trial court granted.

The trial court entered judgment in favor of defendants on December 14, 2018. Dolores timely appealed.

## STANDARD OF REVIEW

" 'The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. . . . We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory.' " (*Burd v. Barkley Court Reporters, Inc.* (2017) 17 Cal.App.5th 1037, 1042.)

We review the denial of a request for a continuance for abuse of discretion. (See *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 153–154.)

## DISCUSSION

### I.   The FAC Does Not State A Cause Of Action For Intentional Interference With Parental Consortium

Dolores argues the trial court erred in ruling that the FAC failed to state a cause of action for intentional interference with

10

parental consortium.  We disagree.  We begin with a discussion of the relevant authority.

### A.  Applicable Law

#### 1.  *Rudley v. Tobias*

*Rudley v. Tobias* (1948) 84 Cal.App.2d 454 (*Rudley*) held that a nine-month-old boy had no cause of action against a woman who allegedly persuaded the infant's father to leave the boy and his family.  The complaint alleged the woman had " 'maliciously and for the purpose of breaking the family of which plaintiff was a member and for the purpose of depriving the plaintiff of the presence, comfort, society, guidance, affection and paternal care of . . . the plaintiff 's father, persuaded the plaintiff 's father to leave the marital household, to remove himself from the family of which both he and plaintiff were members, and to establish his permanent residence with the defendant." (*Id.* at p. 455.)

The court noted that before 1939, Civil Code section 49 provided that " '[t]he rights of personal relations forbid:  (1) The abduction of a husband from his wife or *a parent from his child.*' " (*Rudley*, *supra*, 84 Cal.App.2d at p. 456; see Stats. 1905, ch. 70, § 1, p. 68.)  The court further noted that for purposes of Civil Code section 49, "the words 'abduction' and 'enticement' . . . have been judicially interpreted as synonymous." (*Rudley*, at p. 457, citing *Humphrey v. Pope* (1898) 122 Cal. 253, 256 (*Humphrey*)[5] and *Horowitz v. Sacks* (1928) 89 Cal.App. 336, 340 (*Horowitz*).)

---

[5] *Humphrey* addressed the pre-1939 version of Civil Code section 49 forbidding "[t]he abduction or enticement of a wife from her husband" and "[t]he abduction of a husband from his wife." (Civ. Code, former section 49, Stats. 1905, ch. 70, § 1,

11

In 1939, however, the Legislature amended Civil Code section 49 "by entirely omitting" the subdivision prohibiting abduction of a husband or a parent, although a separate subdivision forbidding " 'abduction or enticement of a child from a parent' " remained. (*Rudley*, *supra*, 84 Cal.App.2d at p. 456; see Civ. Code, § 49, subd. (a) (Stats. 1939, ch. 128, § 1, p. 1245).) Contemporaneous with this amendment, the Legislature also added Civil Code section 43.5, which "outlaw[ed] so-called 'Heart Balm' suits by providing that 'No cause of action arises for[:] (a) *Alienation of affection.*' " (*Rudley*, at p. 456; see Stats. 1939, ch. 128, § 2, p. 1245.)[6]

The court concluded that by omitting the previously express cause of action for abduction of a parent from a child

_____

p. 68; *Humphrey*, *supra*, 122 Cal. at p. 256.) At issue there was whether a wife could recover for "enticement" as opposed to "abduction" of her husband, despite the absence of that language in the statute. (*Humphrey*, at p. 256.) The Supreme Court held that "[t]he abduction meant in both clauses we think should be held to be the same," that is, to include "enticement," in part because legal authorities had interpreted the term "abduction" broadly to include a taking away "by fraud and persuasion" as well as by force. (*Id.* at pp. 256–257.)

[6] Civil Code section 43.5 also bars claims for "[c]riminal conversation," "[s]eduction of a person over the age of legal consent," and "[b]reach of promise of marriage." (Civ. Code, § 43.5, subds. (b)–(d).) "Sometimes referred to as the 'anti-heart-balm statute,' [Civil Code] section 43.5 'was enacted to eliminate a class of lawsuits which were often fruitful sources of fraud and extortion and easy methods "to embarrass, harass, and besmirch the reputation of one wholly innocent of wrongdoing." ' " (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 266–267 (*Richelle L.*).)

under Civil Code section 49, and prohibiting claims for alienation of affection under Civil Code section 43.5, "the Legislature must be deemed to have intended to do exactly what it did do, namely to remove from the law the right of action covered by the omitted subsection." (*Rudley*, *supra*, 84 Cal.App.2d at p. 457.)

The court rejected the plaintiff's contentions that his claim was "comparable to an action for the wrongful death of a parent," not a "prohibited action for alienation of affections," and "that the integrity of the family relation and social considerations demand judicial recognition of the defendant's liability for enticing plaintiff's father from the family home." (*Rudley*, *supra*, 84 Cal.App.2d at p. 456.) The court stated, "Social considerations, and the alleged necessity or advisability of protecting the family relation by upholding the child's action here contended for, are arguments more properly addressed to the legislative branch. The existence or nonexistence of such a cause of action must be determined by the state of the law as it now exists, and the evident intention of the legislative body." (*Id.* at p. 457.)

## 2. *Rosefield v. Rosefield*

Fifteen years after *Rudley*, the Court of Appeal held that a child, age two and a half, stated a cause of action against her grandfather, who allegedly abducted the child from her mother in league with the child's father. (*Rosefield v. Rosefield* (1963) 221 Cal.App.2d 431, 433, 436 (*Rosefield*).) The court stated that a child "is entitled to the society and care, and protection and affection of her mother. The acts of [the grandfather] as alleged have deprived her of these rights." (*Id.* at p. 436.) The court stated that the father's participation did "not change matters so

13

far as the child's rights are concerned, though it may bear on damage." (*Id.* at pp. 436–437.)

The grandfather argued that Civil Code section 49, which prohibited abduction of a child from a parent, "could only give a right to the parent entitled to custody," not to the child.[7] (*Rosefield*, *supra*, 221 Cal.App.2d at p. 437.) The court disagreed, stating, "It is not essential to the child's action that she bring her cause under [Civil Code section 49]. The general principle of liability is that for every wrong there is a remedy. [Citations.] If the case factually is as the pleading states it to be, the child has been deprived of her mother. For this, we believe she has stated a cause." (*Rosefield*, at p. 437.)

The court distinguished *Rudley*, stating, "The case before us is not one of abduction of a parent, but abduction of the child, brought against an alleged participant in the abduction." (*Rosefield*, *supra*, 221 Cal.App.2d at p. 437.) The distinction mattered because "[i]n the case of the parent's 'abduction,' an element of consent of a responsible person, the parent, is present; in the case of the child's, particularly one of the age of two and one-half, there is no such consent." (*Ibid.*) Moreover, "[the grandfather] here has not, as did defendant in the *Rudley* case, taken the affections of the parent from the child; indeed, [the mother's] complaint alleges that she has gone to much expense in trying to regain her daughter." (*Ibid.*)[8]

---

[7] The mother was a coplaintiff in *Rosefield* along with her daughter. (*Rosefield*, *supra*, 221 Cal.App.2d at p. 432.) The portion of the opinion discussing the mother's causes of action is not relevant to this appeal.

[8] *Rosefield* arguably is in tension with *Haldane v. Bogy* (1962) 208 Cal.App.2d 298, which relied on *Rudley* to conclude

14

### 3. *Borer v. American Airlines, Inc.* and *Baxter v. Superior Court*

In *Borer v. American Airlines, Inc.* (1977) 19 Cal.3d 441 (*Borer*), our Supreme Court held that children have no cause of action for loss of consortium due to negligent injury to a parent. In that case, after a mother was injured by a lighting fixture at an airport, her nine minor children sought damages for being " 'deprived of the services, society, companionship, affection, tutelage, direction, guidance, instruction and aid in personality development, all with its accompanying psychological, educational and emotional detriment, by reason of Patricia Borer being unable to carry on her usual duties of a mother.' "

While acknowledging that the children had suffered a "foreseeable injury to a legally recognized relationship," the court declined to recognize their cause of action for loss of parent-child consortium because "social policy must at some point intervene to delimit liability." (*Borer*, *supra*, 19 Cal.3d at p. 446.) The court concluded that "[j]udicial recognition of a cause of action for loss of consortium, we believe, must be narrowly circumscribed. Loss

_____

that a father had not stated a cause of action against his ex-wife for "wrongfully harbor[ing], hous[ing] and conceal[ing]" their minor children from the father. (*Haldane*, at p. 300.) In that case, however, the court took judicial notice of court records indicating the children "were, in fact, legally with their mother and in her custody." (*Id.* at p. 301.) The *Rosefield* court distinguished *Haldane* by characterizing it as a case in which the father "had been deprived of the custody of the children by previous decree of the court, but attempted to bring action on their behalf. The action was considered, apparently, as an alienation of affections case." (*Rosefield*, *supra*, 221 Cal.App.2d at p. 437.)

15

of consortium is an intangible injury for which money damages do not afford an accurate measure or suitable recompense; recognition of a right to recover for such losses in the present context, moreover, may substantially increase the number of claims asserted in ordinary accident cases, the expense of settling or resolving such claims, and the ultimate liability of the defendants." (*Id.* at p. 444.)

The court explained why claims for loss of spousal consortium were permissible, but claims for loss of parent-child consortium were not. (*Borer*, *supra*, 19 Cal.3d at p. 448.)  The court stated, inter alia, that "actions by children for loss of parental consortium create problems of multiplication of actions and damages not present in the spousal context" (*id.* at pp. 448–449), because, as opposed to a claim by a single spouse, " 'the right here debated would entail adding as many companion claims as the injured parent had minor children,' " (*id.* at p. 449).

In a footnote, the court made clear its ruling did not abrogate *Rosefield*: "The considerations which lead us to reject a cause of action for negligent injury to consortium in a parent-child context do not bar an action for intentional interference with parental consortium.  An action for intentional interference with consortium, recognized by precedent in California [citing *Rosefield*] is a relatively unusual tort that presents no danger of multiplication of claims or damages.  The ruling, moreover, may serve to deter child stealing and similar antisocial conduct." (*Borer*, *supra*, 19 Cal.3d at p. 451, fn. 3.)

Along with *Borer*, the Supreme Court issued *Baxter v. Superior Court* (1977) 19 Cal.3d 461 (*Baxter*), which held that, just as a child cannot recover for loss of consortium due to

negligent injury of a parent, a parent cannot recover for loss of consortium due to negligent injury of a child. (*Id.* at p. 466.) Similar to *Borer*, *Baxter* included a footnote stating, "Our decision does not bar a parent's action for intentional interference with the parent-child relationship, a cause of action recognized by California precedent." (*Id.* at p. 466, fn. 3.) In support, *Baxter* cited *Rosefield* as well as *Horowitz*, *supra*, 89 Cal.App. at p. 340, which stated, "It is settled law that the abduction of . . . a child from its parent[ ] is actionable whether the abduction is done by force or by use of persuasion."[9] (*Horowitz*, at p. 340; see *Baxter*, at p. 466, fn. 3.)

### B. Analysis

In ruling that Dolores had failed to state a cause of action for intentional interference with parental consortium, the trial court largely relied on the fact that Dolores is not a minor. Dolores's appellate briefing focuses primarily on this aspect of the trial court's ruling, arguing that the age of the child should not matter.

We need not decide whether only minor children may bring claims for intentional interference with parental consortium, because we conclude the FAC's allegations do not state that cause of action regardless of Dolores's age.

---

[9] In *Horowitz*, which predated the 1939 amendments to Civil Code section 49, a husband obtained a judgment against his wife's family members for abducting her, although the family members claimed the wife suffered from dementia and her husband had in fact abducted her "for the purpose of getting possession of her money." (*Horowitz*, *supra*, 89 Cal.App. at pp. 338–339.) The Court of Appeal reversed because of evidentiary errors. (*Id.* at pp. 341–345.)

17

As set forth persuasively in *Rudley*, the Legislature, by amending Civil Code section 49 and adding Civil Code section 43.5 in 1939, eliminated any cause of action a child may have against a person who abducts or entices his or her parent away from the child, at least when the damages claimed are a loss of affection. (*Rudley*, *supra*, 84 Cal.App.2d at p. 457.) *Rudley*'s holding does not depend on the age of the child; in that case even a nine-month-old infant could not state a cause of action based on the abduction of his father by enticement. (*Id.* at p. 455.) The code sections underlying *Rudley*'s holding have not changed since 1939, and we have found no case abrogating or disagreeing with *Rudley*.

The cause of action barred in *Rudley* is analogous to the second cause of action in the FAC. The FAC alleged that Rochelle "intentionally deprived [Dolores] of the society, care and affection of [Lucy] by intentionally interfering in the mother-daughter relationship and causing it to be permanently severed." Similarly, the complaint in *Rudley* alleged that the defendant persuaded the father "to remove himself from the family of which both he and plaintiff were members," and that defendant did so " 'maliciously and for the purpose of breaking the family . . . and . . . depriving the plaintiff of the presence, comfort, society, guidance, affection and paternal care of ' " the father. (*Rudley*, *supra*, 84 Cal.App.2d at p. 455.)

In short, in both *Rudley* and the instant case, the plaintiffs claimed damages for a loss of "society" and "affection" from their parent, whom the defendant allegedly had persuaded to abandon them for the purpose of destroying the familial relationship. That claim runs afoul of the 1939 changes to the Civil Code

18

eliminating the cause of action for parental abduction and barring claims for alienation of affection.

*Rosefield* did not hold otherwise. *Rosefield* did not disagree with *Rudley*, but distinguished it on the basis that *Rosefield* involved the abduction of the child, not the parent, and thus the abduction in *Rosefield* lacked "an element of consent of a responsible person" present in *Rudley*. (*Rosefield*, *supra*, 221 Cal.App.2d at p. 437.) Also, in *Rosefield* there was no allegation that the defendant had "taken the affections of the parent from the child," a claim prohibited by Civil Code section 43.5. (*Rosefield*, at p. 437.) Instead, the child had lost "the society and care, and protection and affection of [the] mother" because the defendant had physically taken the child from the mother, not because the mother had lost affection for her. (*Rosefield*, at p. 436.)

The points *Rosefield* identified to distinguish *Rudley* similarly render *Rosefield* inapplicable to the instant case. In contrast to *Rosefield*, the FAC does not allege that Rochelle physically took Dolores from Lucy, but that Rochelle through her misconduct turned Lucy against Dolores, causing Lucy to "sever[ ] her relationship[ ] with [Dolores]"—in other words, that Rochelle "t[ook] the affections of the parent from the child." (*Rosefield*, *supra*, 221 Cal.App.2d at p. 437.) Unlike the child in *Rosefield*, Lucy was an adult and "responsible person" capable of consenting to her "abduction" (*ibid*.), in this case accomplished through persuasion rather than force.[10]

---

[10] The FAC alleged that Lucy was 87 years old and "in declining health," and therefore "was vulnerable and the deceptive conduct of [Rochelle] confused her," but did not allege Lucy was incapable of giving consent. We therefore need not

19

The footnotes in *Borer* and *Baxter*, which, as far as we have discovered, remain the only guidance the Supreme Court has provided on the tort of intentional interference with parental consortium, support our conclusion that Dolores has no cause of action under the facts alleged in the FAC. Both cases cite *Rosefield* as the case recognizing the tort under California law. (*Borer*, *supra*, 19 Cal.3d at p. 451, fn. 3; *Baxter*, *supra*, 19 Cal.3d at p. 466, fn. 3). As discussed, the cause of action asserted in *Rosefield* has no resemblance to the cause of action asserted here. Moreover, because *Rosefield* distinguished rather than disagreed with *Rudley*, *Borer*'s and *Baxter*'s approval of *Rosefield* cannot be read to abrogate *Rudley*.

*Borer* also described intentional interference with consortium as "a relatively unusual tort that presents no danger of multiplication of claims or damages" and that "may serve to deter child stealing and similar antisocial conduct." (*Borer*, *supra*, 19 Cal.3d at p. 451, fn. 3.) This description does not apply to the cause of action framed by Dolores. The reference to "child stealing" suggests the sort of extreme "antisocial conduct" that might give rise to an intentional interference claim, conduct notably absent in the instant case.[11] Also, in contrast to the "relatively unusual" situation of a person abducting a child from her parent, claims like Dolores's might arise from common disruptions in family dynamics, such as "a subsequent spouse of a

---

address whether or how a parent's lack of consent to his or her "abduction" might affect a cause of action for intentional interference with parental consortium.

[11] This is not to say the misconduct alleged in the FAC is not "antisocial," just that it is not "similar" to child stealing, either in degree or kind. (*Borer*, *supra*, 19 Cal.3d at p. 451, fn. 3.)

20

parent who arguably interferes in the relationship of the stepchild with the parent," as the trial court in the instant case stated. We hesitate to expand *Rosefield*'s reach to these kinds of disruptions given our Supreme Court's admonition that "[j]udicial recognition of a cause of action for loss of consortium . . . must be narrowly circumscribed." (*Borer*, *supra*, 19 Cal.3d at p. 444.)

Dolores attempts to distinguish her cause of action from that in *Rudley*, arguing that in an intentional interference claim, the wrongdoing is the "disruption of the parent-child relationship," whereas in *Rudley*, the defendant's enticement of the father "away from the marital home" "was the objectionable conduct," with "[t]he loss of society and affection . . . secondary to the objectionable enticement."

By this argument Dolores appears to suggest that in *Rudley* the loss of affection was merely the byproduct, rather than the intent, of the wrongful enticement, whereas Rochelle allegedly deliberately targeted Dolores's relationship with Lucy for destruction. This argument is undercut by the allegations in *Rudley*, which stated the defendant enticed the father " 'maliciously and for the purpose of breaking the family . . . and . . . depriving the plaintiff of the presence, comfort, society, guidance, affection and paternal care of ' " the father. (*Rudley*, *supra*, 84 Cal.App.2d at p. 455.) *Rudley* rejected the claim despite the allegations of malicious and intentional conduct designed to break the plaintiff's family apart and separate father from child.

Further, the 1939 changes to the Civil Code make clear that the Legislature no longer wanted the courts adjudicating suits for emotional injuries arising from disruptions in family dynamics caused by the "abduction" of a parent. The Legislature

21

omitted parental abduction claims entirely from Civil Code section 49 without preserving claims based on intentional conduct, and expressly barred claims for alienation of affection, again without reference to whether the conduct was intentional. (See Civ. Code, §§ 43.5, 49.)  Simply put, there is no support in statute or precedent for Dolores's second cause of action.

## II.  The Trial Court Properly Dismissed The First, Third, Fourth, And Fifth Causes Of Action

The trial court concluded that the first, third, fourth, and fifth causes of action—for intentional infliction of emotional distress, conspiracy, elder abuse, and false light invasion of privacy—arose "out of the same primary right" as the invalid second cause of action, and dismissed them.  On appeal, Dolores argues the "primary right" doctrine applies only in the context of res judicata, and regardless, the first, third, fourth, and fifth causes of action involved different primary rights.

Whatever language the trial court may have used, the crux of its ruling is that the first through fifth causes of action are all based on the same alleged wrongdoing, namely defendants' attempts to turn Lucy against her daughter, thus depriving Dolores of the society, care, and affection of her mother.  As set forth above, California law does not recognize causes of action based on the abduction or enticement of a parent away from a child resulting in alienation of affection.

This cannot be avoided by "the mere recharacterization of the abolished . . . cause of action as a form of negligence or some other acknowledged tort."  (*Richelle L.*, *supra*, 106 Cal.App.4th at p. 267.)  For example, the "abolished torts of alienation of affections and criminal conversation [are] not revived by recognition of the independent tort of intentional infliction of

22

emotional distress." (*Ibid.*, citing *Strock v. Pressnell* (1988) 38 OhioSt.3d 207, 215.) To conclude otherwise would allow plaintiffs to evade Civil Code sections 43.5 and 49 simply by "camouflag[ing] an abolished action with the catchwords of the common law." (*Richelle L.*, at p. 267.)

In *Richelle L.*, for example, the plaintiff sued a priest and his archdiocese for "injuries she allegedly sustained as a result of a sexual relationship initiated by" the priest. (*Richelle L.*, *supra*, 106 Cal.App.4th at p. 263.) The Court of Appeal stated that the plaintiff's causes of action, for "breach of fiduciary duty, fraud and deceit, and intentional and negligent infliction of emotional distress," "all arise from alleged conduct that can fairly be described as a sexual seduction," a cause of action barred by Civil Code section 43.5. (*Richelle L.*, at p. 266; see Civ. Code, § 43.5, subd. (c) [no cause of action for "[s]eduction of a person over the age of legal consent"].) To prevail, then, the plaintiff had to "establish that [the priest's] alleged conduct breached a duty of care independent of the statutorily barred cause of action for seduction." (*Richelle L.*, at p. 267.) The court proceeded to analyze whether the plaintiff could assert independent claims for " 'clerical malpractice' " or breach of fiduciary duty, and concluded she could not. (*Id.* at pp. 269–270, 280–282.)

Here, the first through fifth causes of action "all arise from alleged conduct that can fairly be described" (*Richelle L.*, *supra*, 106 Cal.App.4th at p. 266) as abduction of a parent resulting in alienation of affection. The first cause of action for intentional infliction of emotional distress focuses entirely on conduct allegedly driving a wedge between Dolores and Lucy, including making false statements about Dolores to Lucy, "agitating" Lucy to "sever all relations with" Dolores, convincing Lucy to sign

23

documents excluding Dolores as her health care agent, and preventing Dolores from seeing Lucy, even at Lucy's funeral. The third cause of action for conspiracy is based on the first and second causes of action. The fourth cause of action for elder abuse merely incorporates the allegations of wrongdoing from the first cause of action. The fifth cause of action for false light exclusively concerns attempts to ruin Dolores's reputation with Lucy, which Dolores alleged was "offensive and objectionable" because the false representations "caused, and were done with the intent to cause, the complete disruption of the mother-daughter relationship."

These causes of action do not allege a breach of duty other than defendants' interference with the mother-daughter relationship aimed at turning Lucy against Dolores, thus robbing Dolores of her mother's affection. Whatever the FAC may label its causes of action, the first, third, fourth, and fifth causes of action fail for the same reason the second cause of action for intentional interference with parental consortium fails.

Dolores argues that the harms alleged under each cause of action differ. She asserts the cause of action for emotional distress alleged harm "to her emotional well-being," the cause of action for interference with parental consortium alleged harm "to her familial relationship with her mother," the cause of action for elder abuse alleged harm "to her dignity as an elder," and the cause of action for false light alleged "reputational harm." She concedes the conspiracy cause of action does "not seek redress for a separate right" but merely extends the first two causes of action to include Jesse as well as Rochelle.

Dolores's argument ignores the fact that the harms alleged in the first through fifth causes of action all flowed from her

24

mother severing their relationship. Put another way, the first through fifth causes of action allege no harms other than those arising from the loss of that relationship. As alleged, those causes of action are inseparable from the underlying conduct of abduction of a parent resulting in alienation of affection, and thus none is cognizable under California law.

Dolores has not requested leave to amend the FAC nor has she made any argument as to how amendment could cure the FAC's defects. (*Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 252 [it is plaintiff's burden to show how amendment can cure defects in complaint].) Accordingly, the trial court did not err in dismissing the first through fifth causes of action.

## III. The Trial Court Did Not Abuse Its Discretion By Denying A Continuance

Dolores argues that the trial court abused its discretion by denying her request for a continuance after granting the judgment on the pleadings against her first and third through fifth causes of action, and thus her dismissal of the remaining eighth, ninth, and eleventh causes of action for assault, battery, and conspiracy to commit assault and battery was involuntary and should be set aside.

Assuming arguendo we may set aside a voluntary dismissal following an erroneous denial of a continuance, Dolores's challenge nonetheless fails because the trial court did not abuse its discretion. The trial court did not deny Dolores's request for a continuance outright, but offered her two days instead of five. Rather than accept that continuance and request more time if it proved insufficient, Dolores's counsel immediately rejected the offer and dismissed the remaining claims.

25

A two-day continuance would have been more than reasonable. Dolores was on notice that the trial court might grant the judgment on the pleadings that day. Defendants had filed their request that the court do so sua sponte more than three months earlier, arguing that the first and third through fifth causes of action were barred for the same reasons as the dismissed second cause of action for intentional interference with parental consortium. It should not have been a surprise, then, that the trial court might grant defendant's request once this court and the Supreme Court left untouched the trial court's ruling dismissing the second cause of action. Dolores does not explain why she was not prepared for this contingency. Under those circumstances, the trial court did not abuse its discretion in denying the five-day continuance.

Defendants argue Dolores's voluntary dismissal of the eighth, ninth, and eleventh causes of action, ostensibly without prejudice, in fact was with prejudice because the statute of limitations on her dismissed claims has already run. Defendants request that we modify the judgment accordingly. Because defendants have not appealed from the judgment, we reject this request without expressing any opinion as to its merit. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665 [" ' " 'a respondent who has not appealed from the judgment may not urge error on appeal' " ' "].)

26

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION.


BENDIX, J.


We concur:



CHANEY, Acting P. J.



WEINGART, J.*

---

\*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27